## In re STANDARD COAL MINING & CONVERTERS CORPORATION, Bankrupt.

### BROCK et al. v. SOLOMON.

#### No. 9884.

United States Court of Appeals
Seventh Circuit.

Nov. 16, 1949.

Rehearing Denied Jan. 19, 1950.

R. D. Osgoodby, Paul A. La Rocque, Chicago, Ill., Edward Pree, and Edward G. Pree, Springfield, Ill., for appellants.

820

Harry J. Myerson, Chicago, Ill., Leslie G. Pefferle, Springfield, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and FINNEGAN, Circuit Judges.

DUFFY, Circuit Judge.

This is an appeal from an order of the district court adjudging Ralph M. Brock and Henry E. Becker guilty of willful contempt of court for failure to obey a turnover order issued by the referee in bankruptcy. Both Brock and Becker were ordered committed to jail until each shall have purged himself of said contempt by making a certain specified payment to the trustee in bankruptcy.

Ralph M. Brock was the president and Henry E. Becker the vice president of Standard Coal Mining and Converters Corporation, an Illinois corporation, and hereinafter referred to as "Standard." Brock and Becker controlled and dominated the affairs of Standard and its funds were under their control. Prior to May 9, 1947, attorneys for certain creditors of Standard had conferred with Becker concerning the payment of indebtedness then owing by Standard to such creditors. On May 9, a notice was served on Brock that the creditors would apply to the United States district court on May 10 for the appointment of a receiver and this was done, and Robert C. Solomon was appointed receiver. On June 25, 1947, Standard was adjudicated bankrupt and on August 5, 1947, Solomon was elected trustee of the bankrupt corporation.

An investigation by the trustee disclosed that Standard had bank accounts at the South East National Bank and the City National Bank and Trust Company, both at Chicago. Sums of considerable size had been deposited in and withdrawn from said accounts. In addition to funds incident to Standard's coal mining operations, Standard had received approximately $350,000 in cash as deposits on orders for steel, and at least a part of such deposits were made in the bank accounts hereinbefore described. Orders were taken by Brock or Becker for steel in the so-called grey market, and deposits of $5 a ton and up were accepted upon the understanding that the steel would be delivered by a certain date or the deposit returned. The steel was not delivered and neither Standard, Brock, nor Becker refunded any of the deposits.

On May 9, 1947, the day when service of the notice of application for the appointment of a receiver was made upon Brock, he withdrew $7,300 from the bank accounts belonging to the corporation. Two days prior thereto he had withdrawn $6,200 from said accounts. On the previous April 19 he had withdrawn $500, and on January 28, 1947, $3,500, or a total of $17,500. Between January 28, 1947, and April 9, 1947, Henry E. Becker caused a transfer to himself of a total sum of $19,500 of the funds of the corporation deposited in said accounts. No satisfactory explanation was made at the hearing before the referee as to what had become of the funds thus withdrawn, and the referee made a finding that Ralph M. Brock had in his possession on the day of the filing the petition in bankruptcy, $17,500 of funds belonging to the corporation, and that on said day Henry E. Becker had in his possession the sum of $19,500 of the corporation's funds.

On August 31, 1948, the referee in bankruptcy ordered Brock to turn over the sum of $17,500 to the trustee, and also ordered Becker to turn over to the trustee the sum of $19,500. When Brock and Becker refused or were unable to comply with the turn-over order, the trustee certified to the court that said Brock and Becker had committed contempt.

On March 28, 1949, a hearing was had before the court and Brock and Becker each testified that he had no assets and was unable to comply with the turn-over order. In many respects their testimony was vague, uncertain and unsatisfactory, especially as to the exact nature and amount of assets formerly owned by each of them. The trial judge had the opportunity to observe appellants upon the witness stand and we must accept his judgment as to their credibility. The court announced he was convinced beyond a reasonable doubt that Brock and Becker knowingly and wilfully failed to comply with the referee's turn-over order.

He made findings that on August 31, 1948, the date of the turn-over order, Brock had in his possession $17,500 and Becker had in his possession $19,500 of funds belonging to the bankrupt.

Relying upon the case of Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476, appellants contend that they established at the hearing before the court a present inability on the part of each appellant to comply with the turn-over order, and that such inability is a complete defense in this kind of a contempt proceeding.

▇ Under the state of the record, as we find it before us, sufficient evidence sustains the trial court's finding, and we must affirm its judgment, but that does not mean that Brock and Becker must necessarily spend the rest of their days in jail if they are never able to comply with the turn-over order. We have progressed considerably from the time when imprisonment for debt was commonplace. After a reasonable interval has elapsed, Brock and Becker may again seek to show the court their inability to comply with the turn-over order. Maggio v. Zeitz, supra, 333 U.S. at page 72, 68 S.Ct. 401. On such a hearing they should be prepared to make definite and accurate answers as to what was done with the assets formerly owned by the bankrupt and transferred to them, as well as their own assets.

In view of certain comments made in a colloquy between the trial judge and counsel, indicating the court did not think dissipation of the money was any excuse for non-compliance with the turn-over order, we deem it advisable to emphasize certain principles laid down in the Maggio case, supra. The citations set forth are from the report of that case in Vol. 333 of U.S. Reports:

A turn-over proceeding "is one primarily to get at property rather than to get at a debtor." Page 63, 68 S.Ct. at page 405.

"The nature and derivation of the remedy make clear that it is appropriate only when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defend-

ant *at the time of the proceeding."* Pages 63–64, 68 S.Ct. at page 405.

" * * * we do not consider resort to this particular proceeding appropriate if, at the time it is instituted, the property and its proceeds have already been dissipated, no matter when that dissipation occurred. Conduct which has put property beyond the limited reach of the turnover proceeding may be a crime, or, if it violates an order of the referee, a criminal contempt, but no such acts, however reprehensible, warrant issuance of an order which creates a duty impossible of performance, so that punishment can follow. * * *" Page 64, 68 S.Ct. at page 405.

▇ Whatever value may be left in the presumption of continued possession, it is one which "grows weaker as time passes, until it finally ceases to exist." Marin v. Ellis, 8 Cir., 15 F.2d 321, and "loses its force and effect as time intervenes and as circumstances indicate that the bankrupt is no longer in possession of the missing goods or their proceeds," Brune v. Fraidin, 4 Cir., 149 F.2d 325, 328. In the Brune case the court quoted from 31 C.J.S., Evidence, § 124 page 737, regarding the presumption of continued possession:

"Always strongest in the beginning the inference steadily diminishes in force with lapse of time, * * * until it ceases or perhaps is supplanted by a directly opposite inference."

We are also admonished by the Supreme Court in the Maggio case, supra, that the proper enforcement of turn-over orders can be resolved only by the good judgment of the trial court, mindful that the order should issue only as a responsible and final adjudication of possession and ability to deliver, not as a questionable experiment in coercion which would bring discredit to the judicial process.

▇ At the hearing herein, the trial court seemed reluctant to admit testimony as to what Brock and Becker did with the funds withdrawn from the bank accounts of bankrupt, apparently on the theory that the turn-over order was res adjudicata and could not be collaterally attacked. We agree that such order was res adjudicata,

822

but we are of the view that such testimony was relevant and material. If the funds withdrawn from the bank accounts of the bankrupt are still intact and in the possession of or obtainable by the appellants, the court would be justified in keeping them in jail until they complied with the turn-over order. However, if proof can be made that said funds are in truth no longer available, this fact would have an important relation to appellants' present ability to comply with the turn-over order, and determine whether the terms of the order of commitment for contempt that each appellant be committed to jail "until he shall purge himself of his said contempt" should be modified, or the commitment vacated, and Brock and Becker released. But until such time, the order shall stand and it is hereby affirmed.