**In re A. John ROBERTSON, JR., Debtor.**

**John H. REDFIELD, Trustee, Plaintiff,**

v.

**PEAT, MARWICK, MITCHELL AND COMPANY, et al., Defendants.**

**Bankruptcy No. 86 B 9589.
Adv. No. 88 A 579.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Aug. 29, 1989.

John H. Redfield, Chicago, Ill., Trustee.

Alan C. Kohn, Mark J. Bremer, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, Mo., Thomas P. Arden, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, Ill., Leonard P. Novello, Anthony J. Costantini, Office of the Gen. Counsel, New York City, for defendant Peat Marwick and State Street Bank.

## MEMORANDUM OPINION ON MOTIONS OF DEFENDANTS FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER,
Bankruptcy Judge.

### Introduction

Plaintiff John H. Redfield, Trustee in the A. John Robertson, Jr. bankruptcy ("Trustee") brought this action against defendants PEAT, MARWICK, MITCHELL AND COMPANY ("Peat, Marwick"); the debtor A. JOHN ROBERTSON, JR. ("Debtor"); and STATE STREET BANK & TRUST CO., AS TRUSTEE OF PEAT MARWICK 401(k) PLAN FOR PARTNERS ("Bank"). He seeks recovery of $93,279.01 paid and transferred to Debtor by the other Defendants during this bankruptcy. The money was transferred out of Debtor's account balance in the PEAT MARWICK 401(k) PLAN FOR PARTNERS established by Peat, Marwick for Debtor and its other partners pursuant to the Employee Retirement Income Security Act of 1974, Public Law 93–406, as Amended. Trustee rests his jurisdiction claim on 28 U.S.C. § 157 and § 1334, and also on 11 U.S.C. § 542. However, he does not seek a turnover order against any Defendant, the Debtor having already received and apparently spent the funds transferred to him from the other Defendants. Further, Trustee seeks both a declaration that Debtor had no right

to the 401(k) funds that is superior to the Trustee's rights thereto, and a money judgment against Peat, Marwick and the Bank for $93,279.01 plus costs and interest.

Defendants each moved for summary judgment. Movants have supplied pursuant to Local District Rule 12 (adopted as a Rule of the Bankruptcy Court for this District) their asserted Statement of Material Facts As to Which There is No Genuine Issue of Fact. That Statement is supported by the pleadings and record in this Adversary case and in an earlier Adversary case asserted to be related; an Affidavit and Supplemental Affidavit of Peat, Marwick's attorney Alan C. Kohn; and the record in the related bankruptcy case of the Debtor.

Plaintiff filed a Response to the motion and his affidavit, but has filed no statement under Local District Rule 12(m). Accordingly, pursuant to Local District Rule 12 all contended facts set forth in Movants' Rule 12(*l*) Statement are deemed admitted for purposes of the instant motion. Such deemed admission does not, of course, apply to legal conclusions. The Trustee has suggested in his Memorandum that summary judgment should be granted to him, but he has filed no motion for such relief.

Memoranda were filed by or on behalf of all parties, and those have been reviewed and considered.

Defendants have asserted three grounds for their Motion for Summary Judgment:

First: That in Debtor's schedules filed in the related bankruptcy on July 30, 1986, he claimed the instant 401(k) funds to be exempt; that no creditor or interested party objected to that claim within 30 days as required by Bankr.R. 4003(b); and therefore the claim was allowed by law and the fund revested in Debtor and was no longer property of the estate subject to Trustee's later filed suit and objection to the exemption.

Second: That Trustee is barred on *res judicata* grounds by the final order entered in his earlier adversary case against Peat, Marwick in this Court, Adversary Case No. 86 A 1090.

Third, that no action for turn-over can lie under 11 U.S.C. § 542 where none of the Defendants presently possess the funds in question.

For reasons stated below, the motions for summary judgment cannot be allowed on any of those grounds, it appearing from the record cited above that there are genuine issues as to material facts and the moving Defendants are not on the present record entitled on any ground to judgment as a matter of law.

### Standards for Summary Judgment

Under Rule 56(c) F.R.Civ.P., summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir.1986). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355. However, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Anderson*, 477 U.S. at 250,

106 S.Ct. at 2511. The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on evidence that has been admitted. *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511. In essence, however, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require trial or whether one party must prevail as a matter of law. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12. In determining whether the evidence is sufficient, the court must consider the substantive evidentiary standard that would be applicable at trial (whether preponderance of evidence, clear and convincing, or other). *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.1987), *cert. denied* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

Of course, a party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motions, and must identify those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any", which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. However, once the motion for summary judgment is made and supported as described above, Rule 56(e) provides that a party opposing the motion may not rest upon the mere allegations or denials in his pleading, his response must set forth specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

### Undisputed Facts

From the record cited above, the following relevant facts are found to be undisputed and pursuant to Rule 56(d) F.R.Civ.P., Bankr.R. 7056 are facts without substantial controversy under that Rule, and are therefore established for purposes of trial:

1. John H. Redfield is the duly appointed, qualified and acting Trustee in Bankruptcy ("Trustee") for Debtor A. John Robertson, Jr. in the presently pending Chapter 7 bankruptcy case in this Court, case No. 86 B 9589.

2. This Adversary proceeding arises in and relates to the aforesaid Chapter 7 case of A. John Robertson, Jr. ("Debtor").

3. This Court has jurisdiction over this Adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 542. This Court has personal jurisdiction over all the parties hereto.

4. Peat, Marwick, Mitchell and Company (presently known as Peat, Marwick, Main & Co.) ("Peat, Marwick") is a partnership engaged in public accounting.

5. State Street Bank & Trust Co. (the "Bank") is and was at all times mentioned herein the trustee of funds under Peat Marwick's 401(k) Plan for Partners. Until March 7, 1988, it possessed funds of the Debtor in that account.

6. Debtor was a partner of Peat, Marwick until May 31, 1985 (Statement of Financial Affairs, ¶ 2(c), filed 8/1/86).

7. On June 20, 1986, Robertson filed in this Court a voluntary petition under Chapter 11 of the Bankruptcy Code to which was appended a List of Creditors and List of 20 Largest Creditors (Petition, 6/20/86).

8. The bankruptcy schedules filed by Debtor listed as property of the Debtor four accounts held by Peat, Marwick, namely: (1) a capital withdrawal account, (2) a profit withdrawal account, (3) a deferred compensation account, and (4) a 401(k) Plan account in the stated amount of "$73,662.00 (approx.)" (Schedule B—Statement of All Property of Debtor, including Rider to Schedule B–2(p) and Rider to Schedule B–2(s), all filed 7/30/86). However, those schedules were not filed until July 30, 1986, and no motion was made or order entered allowing extension of time to file schedules beyond the 15 days after June 20, 1986, allowed by Bankr.R. 1007(c) (court file).

9. The Debtor's schedules claimed that the 401(k) Plan account was exempt proper-

ty (Schedule B–4—Property Claimed as Exempt [item 5] and Rider to Schedule B–2(s), filed 7/30/86).

10. On June 30, 1986, this court entered, and the Clerk served copies on creditors, of an order stating that "any objection to the debtor's claim of exempt property ... must be filed within 30 days after the above date [7/30/86] set for the meeting of creditors" (Order and Notice, June 30, 1986, docketed July 14, 1986).

11. No objection to Debtor's claim of exemption regarding the 401(k) Plan profit-sharing account was filed within the thirty days following the first date set for meeting of creditors on July 30, 1986 (court file).

12. At no time prior to expiration of the thirty days following the first date set for meeting of creditors on July 30, 1986 did anyone request of or receive from the Court an extension of time for filing an objection to Debtor's claim of exemption (court file).

13. At no time did the Debtor file any amendment to his list of property claimed as exempt (court file).

14. On October 1, 1986 the debtor-in-possession filed a complaint (Adversary No. 86 A 1090) against Peat, Marwick seeking turnover of property and an accounting (Complaint to Compel Turnover of Property and For An Accounting, filed 10/1/86). Paragraph 6 of the Complaint alleged that:

the debtor was a partner in Peat, Marwick and, in conjunction therewith, maintained various monetary accounts, including but not limited to: (a) Capital Withdrawal Account, (b) Profit Withdrawal Account, and (c) Deferred Compensation Account (hereinafter collectively referred to as the "Accounts").

The "Accounts" as thus defined excluded the 401(k) Plan account (see ¶ 8 supra). The Complaint further alleged that "the Accounts are in the possession, custody or control of Peat, Marwick" (¶ 7). The Complaint sought the remedy of an accounting as to "all funds" of the Debtor held by Peat, Marwick (prayer, (c)). The remedy of turnover, however, was sought only as to:

any and all funds in [Peat, Marwick's] possession, custody or control of any kind or nature whatsoever held for the benefit or account of the debtor (excluding only those funds of the debtor invested in the Peat Marwick 401(k) Plan).... Prayer, (a). (Emphasis supplied.) The Complaint also sought "such other and further relief as this Court deems just and equitable" (prayer, (d)).

15. On February 19, 1987, while the foregoing adversary proceeding against Peat, Marwick was still pending, Debtor's bankruptcy case was converted to a Chapter 7 case (Order, 2/9/87). This Court on March 12, 1987 issued an Order and Notice announcing a new meeting of creditors to commence April 7, 1987, and stating that "any objection to the debtor's claim of exempt property (Schedule B–2) must be filed within 30 days after the conclusion of the meeting of creditors."

16. On February 12, 1987, John H. Redfield, Esq. filed his acceptance of his appointment as trustee (letter filed 2/12/87).

17. On April 6, 1987, the Trustee filed an objection to Debtor's claim of exemption regarding his 401(k) Plan account held by Peat, Marwick (Objection, filed 4/6/87). The objection was served by mail upon Debtor's counsel and other persons, but not upon Debtor himself or upon Peat, Marwick (Affidavit of Mailing And/Or Delivery, filed 4/6/87).

18. The Trustee proceeded as Plaintiff, in the place and stead of Debtor, in Adversary No. 86 A 1090 against Peat, Marwick. At no time was the Complaint against Peat, Marwick amended (court file).

19. On September 17, 1987 this Court in Adversary No. 86 A 1090 entered a consent order resolving the Trustee's Complaint against Peat, Marwick (Agreed Order, 9/17/87). The Order concluded as follows:

[IT IS] ORDERED that the turnover of the funds from Peat, Marwick to the Trustee be and the same is with prejudice, and upon such turnover, this cause (Adversary No. 86 A 1090) shall be deemed dismissed with prejudice as to Peat, Marwick.

Later on October 27, 1987, after the agreed funds had been paid to Trustee, the Adver-

sary case and complaint were ordered dismissed with prejudice without costs pursuant to agreement by and between the parties, all matters having been settled. Neither order specified what accounts the funds turned over came from.

20. Peat, Marwick made payment of $126,112.20 to the Trustee on or shortly after October 12, 1987 and thereby fully satisfied its turnover obligations under the Consent Order of September 17, 1987 in Adversary No. 86 A 1090 (Affidavit of Alan C. Kohn).

21. On or about March 7, 1988 the funds amounting to $93,279.01 in Debtor's account with the Peat, Marwick 401(k) Plan were turned over to Debtor. At that time, Peat, Marwick knew of the pendency of Debtor's bankruptcy case. (Third Amended Complaint to Compel Turnover of Property, ¶ 5, filed 2/24/89, and Answer thereto.)

22. On August 3, 1988, the Trustee filed a second turnover complaint against Peat, Marwick, the pending Adversary No. 88 A 0579, which sought turnover of the 401(k) funds (Complaint to Compel Turnover of Property, filed 8/3/88). As amended, this suit now seeks a money judgment against Peat, Marwick for the value of those funds and declaratory judgment against the Debtor (Third Amended Complaint to Compel Turnover of Property, filed 2/24/89).

## Disputed Facts

From the affidavit of Trustee and Supplemental Affidavit of Mr. Kohn, it appears that there is a dispute over circumstances of settling the earlier Adversary between Trustee and Peat, Marwick, No. 86 A 1090. Trustee contends that he orally expressed to Peat, Marwick's counsel Mr. Kohn a reservation of Trustee's rights to pursue the 401(k) account and that Kohn impliedly agreed, a contention he says is supported by documents that he later received from Peat, Marwick. This assertion is denied by Mr. Kohn who points to the changing drafts of final orders exchanged by the parties at the time to support his view of events.

The foregoing factual dispute bears upon the question of asserted collateral estoppel effect of the agreement and order to dispose of the earlier case and will be discussed below.

## Facts Not Established or Discussed by the Parties

One key fact has not been established on this record and the parties have not referred to it in their submissions. That is the date that the first meeting of creditors *concluded*. It is clear that meeting was set to start on July 30, 1986. However, under Bankr.R. 4003(b) the thirty day period to object starts to run not with the first date set for the meeting but only when the meeting is concluded. Nothing in the submissions of the parties has established that the meeting did or did not conclude on July 30, 1986, the date from which Movants count the 30-day period.

Further there is nothing in the record to show any order allowing the Schedules containing the claim of exemption to be late-filed on July 30, 1986, apparently without leave of court or extension of the time allowed by rule. That filing was forty days after the Petition was filed rather than the 15 days allowed by Bankr.R. 1007(c). Such late filing was the very day that the first creditors meeting was set. The Movants' failure to show any order allowing the late filing is found hereinbelow to be of great significance.

## DISCUSSION

1. *Was Debtor's claimed exemption allowed by law when no objection was filed within 30 days after 7/30/86?*

Movants are strong on the law cited by them. However, because the record does not show when the first meeting of creditors *ended*, and because of the late filing of schedules with exemption claims without any order being shown to have allowed the late filing, their strong legal argument rests on factual quicksand.

Section 522(*l*) of the Bankruptcy Code provides:

> The debtor shall file a list of property that the debtor claims as exempt.... Unless a party in interest objects, the property claimed as exempt on such list is exempt.

Bankruptcy Rule 4003(b) provides:

> The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list unless, within such period, further time is granted by the court....

This 30–day time limit for objecting to a claim of exemption or moving for an extension is mandatory and may not be enlarged even for "excusable neglect." Bankruptcy Rule 9006(b)(1) & (3). "The court may enlarge the time for taking action under Rules ... 4003(b) ... only to the extent and under the conditions stated in those rules." Bankruptcy Rule 9006(b)(3).

It is well-settled that a claim of exemption to which no objection is filed is automatically allowed upon expiration of the 30–day period. *Matter of Brandstaetter*, 767 F.2d 324, 326 (7th Cir.1985) ("Bankruptcy Rule 4003 ... requires that objections to claimed exemptions must be made within thirty days after the creditors' meeting or any amendment, or they are waived"); *In re Grossman*, 80 B.R. 311, 313 (Bankr.E.D.Pa.1987) ("In light of Section 522(*l*) and Rule 4003, numerous courts have held that failure to timely object results in allowance of the exemptions as declared," citations omitted); *In re Keyworth*, 47 B.R. 966, 972 (D.C.Colo.1985) (absent timely objections "claimed exemptions ... must be allowed"); *Matter of Thomas*, 43 B.R. 201, 207 (Bankr.M.D.Ga.1984) (absent timely objection property "is deemed exempt"); 8 *Collier on Bankruptcy* ¶ 4003.02[1], p. 4003–3 (15th ed. 1989) ("debtor's exemptions are automatically allowed under the Code if no objection to them is filed"). *Collier*, in a section entitled "Exemptions Finalized When Deadline for Objections Has Passed," further states:

> Once the deadline for objections to exemptions has passed, no objection may be filed unless the claim of exemption is later amended. Under Code Section 522(*l*), if no party in interest has objected to the exemptions claimed, the property claimed as exempt on the debtor's list is exempt.

*Id.* ¶ 4003.04[3] p. 4003–11 (citing the Seventh Circuit's decision in *Matter of Brandstaetter, supra*).

The effect of the automatic allowance of a claim of exemption due to expiration of the 30–day period is, under well-settled case law, to "revest" the property in the debtor and end its status as "property of the estate." *See, e.g., In re Grossman*, 80 B.R. 311, 314 (Bankr.E.D.Pa.1987); *In re Hahn*, 60 B.R. 69, 73 (Bankr.D.Minn.1986) ("Once a debtor's claim of exemption to property has been allowed by the running of the period for objection to the claim of exemptions under Bankr.R. 4003(b), the property revests in the debtor and is no longer property of the estate"); *In re Kretzer*, 48 B.R. 585, 587 (Bankr.D.Nev.1985) ("Unless a party in interest timely objects, property claimed as exempt is exempted from the bankruptcy estate.... Property exempted from the estate revests in the debtor"); *Matter of Wiesner*, 39 B.R. 963, 965 (Bankr.W.D.Wisc.1984) ("Once property is exempted from the estate it revests in the debtor, and is no longer part of the estate.... [T]he cars in question became property of the debtor after the ... period for objections to exemption expired"); *In re Berry*, 11 B.R. 886, 890 (Bankr.W.D.Pa. 1981) ("[I]f property is claimed as exempt initially it becomes property of the estate, but revests in the debtor upon failure by any party to object to the exemption within a specified period of time"); *In re Cruseturner*, 8 B.R. 581, 590 (Bankr.D.Utah 1981) (same); 3 *Collier on Bankruptcy* ¶ 522.26, pp. 522–82 to 522–85 (15th ed. 1989).

The case of *In re Grossman, supra,* is in point. In that case the trustee in bankruptcy brought an adversary proceeding against the debtor and his employer seeking turnover of the debtor's retirement account (an IRA). In *Grossman,* as here, the debtor had listed the account as exempt property. The bankruptcy court denied

turnover relief on the ground that the trustee had failed to file an objection to the claim of exemption within the 30–day time limit. The court's reasoning is compelling:

... The rules require parties in interest to make objections, or to request extensions of time to make objections, within thirty days from the conclusion of the § 341 meeting of creditors. No such objections or requests for extension were made in this case within that period. The trustee's request for turnover came more than one year after the meeting of creditors was concluded. If this turnover request were to be granted, it would, of course, have the effect of reversing the debtor's claim of exemption, upon which he was entitled to have relied after the running of the thirty day objection period. Requiring a turnover at this point would be tantamount to allowing an untimely objection. The clear language of the statute and procedural rules compels that the debtor prevail in the matter at bench.

[The opinion here sets out the provisions of Code § 522(*l*) and Rule 4003(b).]

Section 522(*l*) thus places the responsibility for challenging the exemptions claimed by debtors upon parties in interest, and Rule 4003 limits the time during which that responsibility may be carried out. In the case at bench, no party in interest objected to the debtor's exemptions (or requested an extension of time to object), within the 30 day time period provided by the rule....

. . . .

Section 522(*l*) and Rule 4003 ... clearly place the burden on the creditor of taking timely affirmative action....

. . . .

Since the plaintiff/trustee failed to voice any objection to the debtor's exemption of his IRA accounts within the statutory period, these accounts are exempt. Consequently, turnover of this property to the trustee is precluded.

*In re Grossman,* 80 B.R. at 312–13 & 315.

The *Grossman* opinion noted the sound policy embodied in the Bankruptcy Code and rules:

The procedural rules thus mandate a conclusion which makes eminently good sense given the framework which the code establishes for administering assets of the estate. Property exempted from the estate revests in the debtor. [citations omitted] A debtor may thereafter use exempt property as (s)he sees fit.

In the matter at bench, the debtor had the right to liquidate his IRA once it became exempt property pursuant to section 522(*l*) and Rule 4003(b). Had he expended the proceeds, there would be nothing to turn over to the trustee in this contested matter. Thus, the deadline for objections and the filing of exemptions where no objection is made serves the necessary purpose of establishing a date on which the rights of various parties can be fixed.

*In re Grossman,* 80 B.R. at 314–15.

The fact that the Debtor's case here was converted to Chapter 7 is immaterial and does not change the general rule. Were it not for the late filing of exemption claim and question about date for conclusion of the creditor's meeting, the transfer of rights to the 401(k) funds from Debtor's estate to the Debtor personally would have occurred automatically by operation of law on August 29, 1986, prior to date of conversion. The funds would then have revested in the Debtor and passed out of the estate as a consequence of the silence and inaction of the creditors and other interested parties.

Nothing in the Code or Rules even remotely suggests that upon conversion from a Chapter 11 case the 30–day time limit can be extended or reopened. To the contrary, Rule 9006(b)(3) explicitly precludes that possibility. Under that Rule the 30–day time limit may be enlarged "only to the extent and under the conditions stated in [Rule 4003(b) ]." The occurrence of a conversion is not among the "conditions" or events listed in Rule 4003(b) where enlargement is permissible. The conclusion that conversion does not serve to start a new time period running under Rule 4003(b) is further confirmed by Rule 1019(3), which explicitly lists those

time limits which do commence to run again upon conversion to Chapter 7. Notably, the Rule 4003(b) time limit is not among those listed in Rule 1019(3).

Permitting previously resolved exemption issues to be revisited whenever there is a conversion would also violate the well-settled principle that the determination of what is or is not property of the estate, which necessarily includes exemption determinations, must be made as of the commencement of the original case and not as of the date of a subsequent conversion. Bankruptcy Code §§ 348(a), 522(b)(2)(A) & 541; *Matter of Williamson*, 804 F.2d 1355, 1359, 1361 (5th Cir.1986) (*Held*, contention that date of conversion from Chapter 11 to Chapter 7 controls exemption eligibility is rejected, the statutory words in §§ 348(a) and 522(b)(2)(A) precluding such an argument; "exemption eligibility is determined as of the original chapter 11 filing date"); *In re Butcher*, 75 B.R. 441, 443 (E.D.Tenn. 1987) ("the date on which the bankruptcy petition is filed [and not the date of conversion to Chapter 7] is the relevant date for determining exemption issues," *citing White v. Stump*, 266 U.S. 310, 313, 45 S.Ct. 103, 104, 69 L.Ed. 301 (1924)), *aff'd*, 848 F.2d 189 (6th Cir.1988); *In re Thurmond*, 71 B.R. 596, 597 (Bankr.D.Or.1987) ("When a debtor has filed a Chapter 11 reorganization proceeding and it is later converted to a Chapter 7 the date the original bankruptcy petition is filed, rather that the date of conversion, is the date on which his exemption eligibility is determined"); *In re Myrvold*, 44 B.R. 202, 205 (Bankr.D.Minn.1984) ("it is clear from the plain meaning of Sections 348 and 541 that the determination of what constitutes property of an estate is unaffected by preconfirmation conversion of a Chapter 11 individual debtor case to Chapter 7"), *aff'd*, 784 F.2d 862 (8th Cir. 1986).

The fact that the Trustee may not be appointed until after the 30–day period for objecting to exemptions expires, and that Trustee was accordingly precluded from objecting, is immaterial. For the same reasons that a conversion from Chapter 11 is ineffective to start a new time period running under Rule 4003(b), so too is the appointment of a trustee ineffective for that purpose. If the Debtor's creditors waive and lose their right to object to exemptions, the Trustee possesses no greater rights or standing than those creditors. There is simply no reason in law or policy why the Trustee at this late date should have some special right to attack the Debtor's exemption if it was allowed before conversion. The Debtor's creditors, by their failure to file any objection, would then be responsible for the exemption having been allowed. The Trustee, whose duty is to serve the aggregate interests of the creditors, has no right or duty to assert an objection if the creditors themselves waive that objection.

This Court's computer form Order automatically entered March 12, 1987, after conversion did not purport to authorize the filing of a new challenge to any exemption that has already been allowed. That Order merely set forth the standard provision that objections to claims of exemptions must be filed within 30 days after the meeting of creditors concludes. It did not purport to make an after-the-fact enlargement of the original 30–day time limit for objecting, which would be proscribed by Bankr. Rules 4003(b) and 9006(b). *Cf. Matter of Gullickson*, 39 B.R. 922, 923 (Bankr. W.D.Wisc.1984) ("In case of seeming conflict between the court's notice and the Federal Rules, the Rules must prevail"); *In re Blum*, 39 B.R. 897, 898 (Bankr.S.D. Fla.1984) ("the courts do not have the power to enlarge the time unless the request for further time is made prior to the expiration date").

While Trustee has cited no authority except the statute in response to the foregoing authority, the Court has searched for additional authority in point. Only two cases were found, each holding that the time to object to exemption claims is extended by the conversion of a Chapter 13 case to one under Chapter 7. *In re Winchester*, 46 B.R. 492 (9th Cir. BAP, 1984); and *In re Lindberg*, 735 F.2d 1087 (8th Cir.1984) *cert. denied*. However, the reasoning in *Matter of Williamson*, 804 F.2d 1355, 1359–62 (5th Cir.1986) properly dis-

tinguishes the Chapter 13 conversion from a conversion of a case originally filed under Chapter 11.

The Trustee's objection is also said by Defendants to be invalid and ineffective for the further reason that the undisputed evidence is that the objection was not served on the Debtor individually (¶ 17 of Movants' Rule 12(*l*) Statement of Material Facts). Rule 4003(b) explicitly requires that "[c]opies of the objections shall be delivered or mailed ... to the person filing the list [of exempt property] and the attorney for such person." The courts have held that this service requirement must be strictly complied with because it is essential to effectuate the purpose of the Code and Rules. *See In re Hilmoe*, 56 B.R. 262, 263 (Bankr.D.S.D.1985) ("[T]he Trustee's objection was timely filed, but the objection must fail because it was not timely served as required by the Rules. [The lack of timely service] derogates the requirements of the Rules and undermines the purpose of limiting the time when an objection may be made ... [which] allows the debtor to seek a prompt determination of his right to exemptions, and, consequently, furthers the 'fresh start' policy behind the Code."); *In re Kjerstad*, 56 B.R. 260, 262 (Bankr.D.S.D.1984) (trustee's objection dismissed where debtor was not timely served: "There is no finality for a debtor who has not been served with an objection, notwithstanding the fact that the objection is filed with the Clerk of the Bankruptcy Court.... [P]rejudice to the debtor will be presumed when considered in the light of the applicable rules and the policy of finality behind them"). Accordingly, failure to serve Debtor with notice of objection to a properly filed claim of exemption would be fatal, at least where Debtor disposed of the property claimed exempt before receiving notice of the objection.

Were it not for the two problems earlier mentioned, the 401(k) funds held by Peat, Marwick would be found here to have "revested" in the Debtor and ceased to be property of the estate on August 29, 1986. Movants would then have been entitled to summary judgment in their favor because the funds would not have been property the Trustee could "use, sell or lease." 11 U.S.C. § 542.

However, life and the law are not so simple. In this case the Debtor did not fulfill his obligation to file his Schedules and Statements within 15 days after the Petition was filed, as required by Bankr.R. 1007(c). An extension of that period could have been considered on motion for cause shown and notice to any creditors committee or "other party as the court may direct." Bankr.R. 1007(a)(4). This Court would generally require that such notice go to all creditors, or at least to the twenty largest creditors if no creditors committee is appointed. But Debtor did not, insofar as the Court docket reflects, move for such relief. Therefore no notice went out. Instead, Debtor simply filed the schedules and exemption claims late without leave of court on July 30, 1986, the same day that the creditors meeting was set.

It must also be noted that the exemption claim was for "$73,662.00 (approx.)" whereas the 401(k) fund later turned over by Peat, Marwick to Debtor was $93,274.01. The amount of claimed exemption was thus understated by 21%. If the claim were allowed, would it be allowed in the full amount or only the original amount claimed? 8 *Collier on Bankruptcy* ¶ 4003.03[1], p. 4003–6 (15th ed. 1989) says:

> Normally, if the debtor lists property as exempt, that listing is interpreted as a claim for exemption of the debtor's entire interest in the property, with the debtor's valuation of that interest as the amount of the exemption claimed. Were it otherwise, with the claim of exemption construed to claim as exempt only that portion of the property having the value stated, the provisions finalizing exemptions if no objections are filed would be rendered meaningless. The trustee or creditors could always claim that the debtor's interest in the property was greater than the value claimed as exempt and effectively still object to the debtor exempting his or her entire interest in the property after the deadline for objections had passed.

*But see Payne v. Wood,* 775 F.2d 202, 13 C.B.C.2d 1047 (7th Cir.1985), holding that when the debtor's conduct indicated that information was concealed from the trustee, a categorical claim of exemption would not be honored beyond the value the debtor attached to the category. However, this case may also be read as simply adopting the principle that the debtor may not exempt property which has been concealed. *See* 3 *Collier on Bankruptcy,* ¶ 522.08[2] (15th Ed.1987).

In the *Payne* case referred to by Collier, the Seventh Circuit panel pointed out that:

When the debtor's listing withholds information that the trustee may find helpful in deciding to make such a request [for more information], a categorical claim of exemption should not be honored beyond the value the debtor attached to the category. After all, property passes to the estate automatically and it is the debtor's burden to make out the claim of exemption with adequate specificity.

*Payne v. Wood,* 775 F.2d 202, 206 (7th Cir.1985). Thus a serious question is presented here whether the exemption claim if allowed would extend to the full $93,274.01, or only to the $73,662.00 claimed. However, we need not reach that question to decide the pending motions.

Bankruptcy Rule 9006(b)(1) permits an extension of time to file exemption claims if requested after the original time has expired, but only where the failure to act in time was the result of "excusable neglect." Here, there was no timely motion, no late motion, no motion at all. And, of course, there has been no showing of excusable neglect or notice to creditors.

The Debtor and other Defendants here who seek the normal benefit that flows from a timely claim of exemption not timely objected to, rest their contention on a late-filed claim that the Court never allowed to be filed.

█ As discussed above, the deadline for objection to a claim or amended claim of exemption is normally enforced strictly. Courts having been willing to allow such late objections in unusual cases. *Cf. In re Woodson,* 839 F.2d 610, 18 C.B.C.2d 674 (9th Cir.1988). Here, however, there is no need to apply the reasoning of such authority. In this case, the exemption claim late-filed without notice, motion, or leave of Court, is not entitled to the automatic allowance that Bankr.R. 4003(a) gives to a timely filed exemption claim if it is not timely objected to. He who seeks to benefit by the Bankruptcy Rules must abide by them.

Based on the foregoing, the first argument of Movants must and does fail.

The last point is a simple one, but very clear. The record does not show when the first meeting of creditors concluded. The date of its conclusion starts the 30–day period under Bankr.R. 4003(b). For that separate and additional reason, the first ground of Movants' motion for summary judgment must be denied.

### 2. *Does res judicata in Adversary Case No. 96 A 1090 bar this suit?*

The Court records in Adversary Case No. 86 A 1090 set forth the history of all pleadings and orders in that case which Movants now contend worked a *res judicata* barring the instant suit.

During his Chapter 11 case, Debtor filed a turnover complaint against Peat, Marwick to recover his partnership account in the sum of approximately $120,000.00 arising out of the partnership agreement dated July 1, 1975. That account was subject to the prejudgment attachment claim of the Centerre Bank. The suit also sought accounting for "all funds" in Peat, Marwick's possession "... (excluding only those funds of the debtor invested in the Peat Marwick 401(k) Plan)...." After the conversion of the Chapter 11 proceeding to a Chapter 7 proceeding, the bankruptcy trustee intervened as a party plaintiff in place of the Debtor. Peat, Marwick, the Trustee and the Centerre Bank resolved the turnover complaint and the alleged lien claim pursuant to an agreed order wherein Peat, Marwick turned over the entire partnership account to the Trustee and the

Centerre Bank received 50% of its alleged lien claim. The case was dismissed with prejudice.

Trustee now contends that during the negotiations leading to settlement of 86 A 1090, the attorney for Peat, Marwick was advised of the fact that the Trustee intended to pursue a turnover of the Debtor's 401(k) account. The Debtor had claimed that account as exempt and Trustee objected to the exemption. In the course of settlement discussions over the earlier case, the attorney for Peat, Marwick sent Trustee a copy of the 401(k) Plan dated February, 1985, which is attached to the instant pending complaint. He also advised Trustee as to the current balance of the 401(k) account, and identified the Trustee of the 401(k) Plan.

Subsequently, in the second case now pending, the Trustee filed a turnover complaint against the Debtor; Merrill, Lynch, Pierce, Fenner & Smith, Inc.; Peat, Marwick, Mitchell & Company; and the State Street Bank & Trust Company, as Trustee of the Peat, Marwick 401(k) Plan for Partners. This suit sought to recover the Debtor's 401(k) account and his Individual Retirement Account. As a result of the new suit, the Trustee says he discovered that the 401(k) trust was a passive trust in that all direction over the trust and its accounts was held by Peat, Marwick; that Peat, Marwick permitted the Debtor to withdraw his entire 401(k) Plan in the approximate sum of $93,000.00 in March of 1988; and that Debtor dissipated the entire $93,000.00 in addition to his $18,000.00 I.R.A. account wherein Merrill, Lynch was the Trustee.

Defendants now argue that Trustee's present claim is barred by *res judicata* based on the following arguments:

1. In *Robertson v. Peat, Marwick, Mitchell & Co.*, Adversary Case No. 86 A 1090, the Trustee asserted a claim against Peat, Marwick pertaining to all funds of the Debtor then in Peat, Marwick's possession, custody or control. They argue that included the 401(k) funds. Although the Trustee did not seek the remedy of turnover with respect to the 401(k) funds (and expressly excluded those funds from the relief requested), he did seek that remedy as to three other funds held by Peat, Marwick. In addition the Trustee sought the remedy of an accounting as to "all funds" in Peat, Marwick's possession as well as unspecified "other and further relief." From that, despite the express exclusion in the prayer for relief, Defendants claim that the earlier suit covered the 401(k) fund as well as the other funds.

2. In an Agreed Order entered September 17, 1987, this Court ordered that "this cause (Adversary No. 86 A 1090) shall be deemed dismissed with prejudice as to Peat, Marwick."

3. The September 17, 1987 Order is argued to have *res judicata* effect in the instant proceeding for the following reasons: (i) there is identity of the parties or their privies; (ii) the cause of action and subject matter are said to be the same; and (iii) the dismissal order "operates as an adjudication on the merits" (Bankruptcy Rule 7041; F.R.Civ.P. 41(b)).

Defendants argue that the doctrine of *res judicata*, which bars all claims that were raised or could have been raised in the prior proceeding, applies to and necessarily bars the instant adversary proceeding.

Trustee responds that *res judicata* does not apply because:

1. The two Adversary cases present separate and distinct claims, and pleadings in those cases and the documents on which they rest make that clear.

2. As set forth in the Trustee's Affidavit, there was an Agreement between him and Peat, Marwick, either express or implied, that settlement of the initial turnover complaint would not bar a subsequent complaint pertaining to the 401(k) Plan account.

A. The two actions were distinct claims.

■ The doctrine of *res judicata* applies to a consent order entered in an Adversary proceeding in a bankruptcy case. *Matter of Energy Co–Op, Inc.*, 814 F.2d 1226 (7th Cir.1987), *cert. denied* 484 U.S. 928, 108

S.Ct. 294, 98 L.Ed.2d 254 (1987). The doctrine has three requirements:

(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits.

814 F.2d at 1230 (citing authorities). Movants first argue that the "identity of parties or their privies" requirement is satisfied, and that State Street Bank by virtue of its status as the Trustee of Peat Marwick's 401(k) Plan (attached to Plaintiff's Complaint), is Peat, Marwick's "privy" for *res judicata* purposes.

■ The requirement for a final judgment is certainly met. Where a proceeding is dismissed "with prejudice," the dismissal operates as an adjudication on the merits and qualifies as a "final judgment" for *res judicata* purposes. *See* Bankruptcy Rule 7041; F.R.Civ.P. 41(b); *Matter of Energy Co-Op*, 814 F.2d at 1234–35 ("a dismissal with prejudice is a final judgment on the merits which will bar a second suit between the same parties for the same cause of action" citations omitted); *Cartolano v. Tyrrell*, 421 F.Supp. 526, 530 (N.D.Ill.1976).

■ Finally, Movants argue that there is also "identity of causes of action" in the case at bar. The pending Adversary proceeding, like the first, is brought by the Trustee against Peat, Marwick under the bankruptcy laws. The suit is in connection with Debtor's bankruptcy case, and arises out of the Debtor's prior partnership relationship with Peat, Marwick, pursuant to which Peat, Marwick came to possess various accounts alleged to belong to Debtor's bankruptcy estate. Significantly, however, the Complaint in the Trustee's first adversary proceeding specifically excluded any claim for relief as to Debtor's 401(k) account then held by Peat, Marwick, and did not include that account in the "accounts" referred to and defined by the suit. The particular remedy of turnover was not expressly sought as to Debtor's 401(k) account in the prior proceeding, while turnover was sought as to three other specified accounts of Debtor held by Peat, Marwick.

Movants argue that the request for accounting as to "all funds" held by Peat,

Marwick and the general request for "such other and further relief as this court deems just and equitable" swept the 401(k) account into the earlier case despite the express disclosure of prayer for turnover as to that account. The Trustee's present claim for turnover of the 401(k) funds is also said to be a claim arising out of the same "transaction" involved in the first proceeding, one that "could have been raised" in the first proceeding. *Matter of Energy Co-Op*, 814 F.2d at 1230 ("all claims arising from that transaction must be brought in one suit or [be] lost" citations omitted); *Hagee v. City of Evanston*, 729 F.2d 510, 512 (7th Cir.1984) (*res judicata* bars not only matters that were raised and decided in the earlier suit "but also all other matters that could have been raised in the earlier suit"); *Diaz v. Indian Head, Inc.*, 686 F.2d 558, 562 (7th Cir.1982) (the test is "whether the claim now raised arises out of the 'same basic factual situation' ... and could properly have been raised in the earlier suit" citations omitted); *Gasbarra v. Park–Ohio Industries, Inc.*, 655 F.2d 119, 121 (7th Cir.1981) (test of *res judicata* is "whether the claims 'arise out of the same basic factual situation'"); *Klingman v. Levinson*, 66 B.R. 548, 551 (N.D.Ill.1986) (*res judicata* bars "all that which might have been litigated previously"), *aff'd*, 831 F.2d 1292 (7th Cir.1987); *In re Abco Metal Corp.*, 36 B.R. 344, 348 (Bankr.N.D.Ill.1984) (*res judicata* applies "not only to those matters actually determined in the prior suit, but also to matters properly involved which could have been raised in the prior suit"); *Cartolano*, 421 F.Supp. at 529–30 (*res judicata* applies "'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose'" citations omitted).

The Seventh Circuit has rejected the practice of "claim splitting" whereby a plaintiff brings a second suit seeking a different remedy or form of relief than he sought in a prior suit arising out of the same factual circumstances. In *Gasbarra*,

*supra,* an employee brought suit against his employer for fringe benefits. In a prior suit arising out of the same employment dispute the employee had sought to recover salary and bonus amounts, but failed to seek relief regarding his fringe benefits. The Seventh Circuit held that a final judgment entered in the first proceeding barred the second:

> We find that the instant claim for fringe benefits did arise from the same basic factual situation as the suit for salary and bonuses, and thus might and could, as we hold should, have been resolved in the first lawsuit. Both sets of claims arose from the employment relationship between the parties, and from the defendant's letter of March 6, 1972 terminating the plaintiff's employment and all the rights thereunder. The presence of the references to the fringe benefits in the pleadings and the proposed judgment in the first case makes it clear both that the plaintiff was aware of his rights at the time of the first suit, and that those rights arose from the same basic facts as the claim for salary and bonuses. At the time of the filing of the prior suit the plaintiff had a fully matured claim to the fringe benefits which depended on the same employment relationship as did the claims for salary and bonuses.

*Gasbarra,* 655 F.2d at 121–22. The Court concluded that the plaintiff was "engaging in … prohibited 'claim splitting.' " *Id.* at 121.

However, it is also clear that application of *res judicata* requires that the two claims have a common core of operative facts. *Matter of Energy,* 814 F.2d at 1231.

Movants here contend that there were "references" to the 401(k) account and to the remedy of turnover in the Trustee's first adversary proceeding. Arguing from the reasoning in *Gasbarra,* 655 F.2d at 121, they say "… that the plaintiff was aware of his rights at the time of the first suit." *Id.* at 121–22. Moreover, "[a]t the time of the filing of the prior suit the plaintiff had a fully matured claim [for turnover of the 401(k) account] which depended on the same [partnership] relationship as did the claims for [accounting and other relief]." *Id.* at 122. For the same reasons, Movants say that the Trustee in the case at bar has engaged in "prohibited 'claim splitting' " and the instant proceeding is therefore barred by *res judicata. Id.* at 121.

However, from review of the facts and records shown in the two cases, this Court concludes that the two turnover complaints represent separate and distinctive claims. The first complaint involved the partnership agreement dated July 1, 1975, and the second complaint involved a 401(k) Plan and trust agreement, dated February, 1985. The parties to the complaints are different with the addition of the Trustee–Bank in this case; the issues and defense are different; and the accounts sought are distinct. The second complaint involves issues such as whether the trust in question is a spendthrift trust as defined by the Bankruptcy Code, and whether and to what extent the Debtor has an exemption in and to that trust. Furthermore, the parties to the action and the possessor-trustee of the various accounts differ. Fairly read, the first Adversary case expressly excluded the 401(k) account despite the general language as to "all accounts" and "all other and further relief."

The latter words are indeed weak reeds for Movants to hang their arguments on. It is clear that Trustee in that case was after "accounts" defined so as to exclude the 401(k) account. Those accounts were "all accounts" held by Peat, Marwick, and the request for "all accounts" certainly did not apply to an expressly excluded account held by the Bank.

■ A plaintiff is not required to bring in one suit and a single complaint all claims he possesses against a party arising from different transactions. *See* Rule 18(a) of the Federal Rules of Civil Procedure, Bankr. R. 7018; and *Commercial Box and Lumber, Inc. v. Uniroyal, Inc.,* 623 F.2d 371 (5th Cir.1980). The debtor-plaintiff and trustee-plaintiff were free not to bring all different claims in a single complaint, to avoid undue complexity. *United States v. Skokomish Indian Tribe,* 764 F.2d 670 (9th

Cir.1985). The Trustee intervened in the first case as plaintiff and settled that case because it concerned the Debtor's commercial account and liens against that account arising out of the partnership agreement. The instant suit was brought separately because it concerned retirement accounts in the physical possession of the Bank, and raises different issues relating to retirement accounts such as the applicability of spendthrift clauses, ERISA laws and the Debtor's exemptions in and to said retirement accounts.

In the case of *Himel v. Continental Illinois National Bank & Trust Co.*, 596 F.2d 205 (7th Cir.1979), the court found separate and distinct claims arising out of the same trust agreement involving the same period of time. In the case of *Amaro v. Continental Can Co.*, 724 F.2d 747, 749 (9th Cir.1984) the court held that employee ERISA claims were separate from their arbitration and employment grievances. In *Amaro,* the court held that the "rights involved in the employees' contractual claim before the arbitrator are independent of those implicated in their statutory claim under ERISA."

Likewise, in the instant case, the Debtor's rights in and to his partnership account and his retirement account are totally distinct because they involve different agreements, different parties, different transactions, different laws, different defenses, different facts and different points in time.

In the case of *Louis Cook Plumbing & Heating, Inc. v. Frank Briscoe Company,* 445 F.2d 1177 (10th Cir.1971) the court held that an adjudication of subcontractor's rights against a contractor under the Miller Act did not bar a second lawsuit for negligence and breach of contract involving the same parties for damages arising out of the same rainstorm. The Court of Appeals held that the rights under the Miller Act were separate and distinct from the plaintiff's common law rights. In the instant case, there exists a greater distinction because, in addition to the rights, parties and defenses being different, the transactions, facts and occurrences arose at totally different times.

In the case of *Gedeon v. State Farm Mutual Automobile Insurance Co.*, 342 F.2d 15 (3rd Cir.1965) the court held that a breach of the insurer's duty to properly investigate and settle an accident claim is a separate and distinct cause of action from the insurer's breach of duty to defend under the same policy. In the instant case, the two actions are more distinct in that they arise out of different contracts, occurrences and transactions.

Peat, Marwick relies heavily on the case of *In the Matter of Energy Co-op. Inc.*, 814 F.2d 1226 (7th Cir.1987) *cert. denied* 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987). *Energy Co-op.* is easily distinguishable from this case. In *Energy Co-op.*, the court held that *res judicata* barred a preference action because the prior suit and the preference suit arose out of the same agreement.[1] In the instant case, two separate and distinct agreements exist resulting in separate and distinct accounts and claims.

Restatement of Judgments, 2nd, Section 24(2) states:

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

In applying Section 24(2) of the Restatement, the Debtor's retirement account and the partnership account constituted separate and distinct transactions arising out of separate and distinct agreements.

B. *Was there agreement between the parties that the settlement of the first case did not bar the second?*

Trustee claims that it was at least "impliedly agreed" by the parties that the dismis-

---

1. "Because each claim seeks to reconcile the parties' obligations under their contract and because the time periods covered by the two claims overlap, we conclude that the two arise out of the same covered-transactions." *Energy Co-op,* 814 F.2d at 1231.

sal of the first turnover complaint was not intended as a bar to seek turnover of the 401(k) Plan account. He says by affidavit that he told Peat, Marwick's lawyer Kohn by phone that he was going to seek a turnover of the 401(k) Plan account even though it was claimed as exempt by the Debtor. The Trustee says that he further told Kohn that he objected to the exemption. He claims that he and Kohn had an "understanding," that he would pursue his objection and seek the turnover, pursuant to which Mr. Kohn later supplied the Trustee with relevant documents and told him the location and value of the account. In his letter dated October 2, 1987, two weeks after the earlier case was settled, Mr. Kohn stated to Trustee that "this [401(k) account] represents all the money we have due Mr. Robertson". Furthermore, Peat, Marwick's statement of account dated June 30, 1986, and supplied to Trustee did not include the value of the 401(k) Plan account in issue here. All of that tends to support the Trustee's contention that the parties treated the 401(k) account as being entirely separate from the case that was settled.

It was subsequent to those events that the 401(k) fund in question was released to Debtor.

Mr. Kohn's supplemental affidavit says that he does "not recall Mr. Redfield ever telling me in a phone conversation (or otherwise) at any time before the Consent Order was entered by the court, that he intended to pursue a turnover claim against Peat, Marwick regarding the debtor's 401(k) funds." He also denies any agreement, express or implied, to allow Trustee to seek turnover of the 401(k) funds after the first suit was settled. Mr. Kohn further showed (without contradiction by Trustee) that he insisted that the order dismissing the first case be with prejudice, not without prejudice as in Trustee's draft order. He also wrote Trustee that "the parties have settled all of their differences" in explaining the draft change.

Trustee has given no authority to show why the asserted "agreement" would change the res judicata effect of the dismissal order in the first case, if indeed that order had been found to work a res judicata.

While there is a fact dispute as to the asserted "agreement," that is not significant here. The parties, in writing, agreed to a dismissal of the first case with prejudice. Parol evidence is not admissible to vary the terms of the clear and unequivocal written agreement for dismissal with prejudice which was signed by the Trustee and submitted by the Trustee for entry by the court. *LaSalle National Bank v. Service Merchandise Co.*, 827 F.2d 74, 78–79 (7th Cir.1987); *American National Bank & Trust Co. v. United States*, 142 F.2d 571, 572 (D.C.Cir.1944) (counsel's affidavit not admissible to show prior dismissal was meant to be without prejudice; "The judgment of a court cannot be modified by extrinsic evidence"); *Continental Ill. National Bank & Trust Co. v. Stanley*, 606 F.Supp. 558, 562–63 (N.D.Ill.1985). The Trustee's initial draft order—that the settlement should be "without prejudice to turnover of other [i.e., 401(k)] accounts"— was not part of the parties' final settlement agreement. The "with prejudice" language in the final Consent Order would have had full preclusive effect for *res judicata* purposes, had the Court not earlier found herein that the differences in the two suits prevented such effect.

3. *Can this action lie where Defendants have not possessed the property during its pendency?*

Defendants finally argue that the case should be dismissed because the Complaint rests in part on 11 U.S.C. § 542 which requires delivery to Trustee of estate property and accounting for the value of such property. They say that § 542 can't apply since Defendants no longer had the fund when this Adversary Complaint was filed and don't have it now.

If the remedy of turnover were sought, this argument would have merit.

██ An action for turnover may not be maintained against one not in present possession of the property. *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948); *In re Glostex Products, Inc.*, 295

F.2d 324, 326 (7th Cir.1961) ("a turnover order may not issue without a showing of possession"), *cert. denied,* 369 U.S. 828, 82 S.Ct. 846, 7 L.Ed.2d 794 (1962); *In re Standard Coal Mining & Converters Corp.,* 178 F.2d 819, 821 (7th Cir.1949) (turnover requires "possession ... by the defendant at the time of the proceeding"), *cert. denied,* 339 U.S. 937, 70 S.Ct. 673, 94 L.Ed. 1355 (1950); *Yaquinto v. Greer,* 81 B.R. 870, 878 (N.D.Tex.1988) (plaintiff has "the burden of proof [to] demonstrate that the property sought to be turned over is in the possession or control of the defendant at the time the turnover proceeding is commenced"); *In re De Berry,* 59 B.R. 891, 895 (Bankr.E.D.N.Y.1986); *In re Bell & Beckwith,* 44 B.R. 659, 660 (Bankr.N.D.Ohio 1984) (turnover requires "present possession.... It is, therefore, academic that if an entity previously in possession of estate property is no longer in possession of the property, they cannot be made subject to an order of turnover based on 11 U.S.C. § 542"); *Matter of Galster,* 38 B.R. 72, 75 (Bankr.W.D.Mo.1984) ("[I]t is the duty and burden of the trustee in bankruptcy, in seeking a turnover order, to demonstrate that the property sought to be turned over is currently in possession of the defendant from whom it is sought"); *In re Barrett,* 39 B.R. 792, 795 (Bankr.D.Minn.1984) ("By that date however, the City was not possessed of any property, having long since made payment to the subcontractors. There can be no turnover of property that does not exist."); *Matter of Lehan Bros., Inc.,* 29 B.R. 553, 554 (Bankr.M.D.Fla.1983) ("turnover ... cannot be granted simply because there is no longer any property of the estate on the premises in control of the Defendant").

The rationale of this settled rule was recently articulated by the Bankruptcy Court sitting in the Eastern District of New York:

The clear language of the statute [§ 542] requires actual or constructive possession by a defendant as a fundamental predicate to a trustee's turnover rights. This is not a new requirement imposed by the Bankruptcy Code.... Nearly forty years ago, the Supreme Court of the United States, in a case decided under the now repealed Bankruptcy Act, stressed that a turnover request essentially partakes the characteristics of a proceeding in rem. *Maggio v. Zeitz,* 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948). In *Maggio v. Zeitz, supra,* 333 U.S. at 63, 68 S.Ct. at 405, the Supreme Court elaborated on the basis of turnover, stating:

... [T]he theoretical basis for this remedy is found in the common law actions to recover possession—detinue for unlawful detention of chattels and replevin for their unlawful taking—as distinguished from actions in trespass or trover to recover damages for the withholding or for the value of the property. Of course the modern remedy does not exactly follow any of these ancient and often over-lapping procedures, but the object—possession of specific property—is the same. The order for possession may extend to proceeds of property that has been disposed of, if they are sufficiently identified as such. But it is essentially a proceeding for restitution rather than indemnification, with some characteristics of a proceeding in rem; the primary condition of relief is possession of existing chattels or their proceeds capable of being surrendered by the person ordered to do so. *It is in no sense based on a cause of action for damages for tortious conduct such as embezzlement, misappropriation or improvident dissipation of assets.*

Under the former Bankruptcy Act, a trustee had the burden of proving that the property sought to be turned over is in the possession or control of the defendant at the time the turnover proceeding is commenced.... The plain meaning of 11 U.S.C. § 542(a) and the very nature of a turnover proceeding teaches that a trustee must still sustain such a burden under the Bankruptcy Code....

*In re De Berry,* 59 B.R. at 895–96 (Citations omitted, emphasis supplied.)

■ The foregoing authority cited by Movants could be said to stand for the simple proposition that even in bankruptcy one cannot be made to turn over something

he doesn't have. But 11 U.S.C. § 542 provides a remedy for much more than turnover of something held when the Adversary is filed. It also provides that

"... an entity ... in possession, custody, or control, *during the case,* of property that the trustee may use, sell or lease under section 363 of this title ... shall deliver to the trustee, *and account for,* such property *or the value of such* property...."

11 U.S.C. § 542(a) (emphasis supplied).

The statute plainly applies to estate property that was possessed by anyone "during the case", whether or not they still have it. The statute imposes an obligation on that party to "account for" that property "or the value of said property". It is the latter remedy that Trustee seeks in his Third Amended Complaint which prays for judgment against Defendants for the value of the fund no longer possessed; for declaration that Debtor had no right to the fund superior to Trustee's right; and for such other relief as may be just.

■ This case is what the court in *De Berry, supra* felt was not before it when it dismissed therein, saying about that case:

"It is in no sense based on a cause of action for damages for tortious conduct such as ... misappropriation or improvident dissipation of assets."

59 B.R. at 896.

The Complaint in issue here, broadly read under principles of Federal notice pleading, is one for tortious conduct of that sort. The mere fact that the parties no longer possess the fund therefore does not dispose of the case as a matter of law, and certainly does not warrant summary judgment.

According to *In re Smith Corset Shops, Inc.,* 696 F.2d 971 (1st Cir.1982), and the legislative history, S.Rep. No. 989, 95th Cong., 2d Sess. 84, reprinted in 1978 U.S. Code Cong. and Ad.News, 5787, 5870, Section 542(c) of the Bankruptcy Code codified the Bankruptcy Act case of *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). Prior to *Marin,* an entity was absolutely liable to the Trustee in Bankruptcy for the turn over of personal property of the Debtor or its value in his possession or control at the time that the Petition in Bankruptcy was filed. *Marin* was authority for an exception to the above rule, later codified by Congress in Section 542(c). The exception or defense to the aforesaid turnover rule is that an entity that transfers property after the filing of the bankruptcy case to someone other than the Trustee in Bankruptcy, is not liable for the value of said property if the transfer was made in good faith without notice or actual knowledge of the bankruptcy case.

In the instant case, it is alleged that Peat, Marwick permitted and authorized transfer of the 401(k) Plan account to Debtor with knowledge of pending bankruptcy proceedings.

In the case of *In re Hoffman,* 51 B.R. 42, 46 (Bankr.W.D.Ark.1985), the court in citing the foregoing authorities stated:

By implication, however, if the bank transfers property of the estate after it receives notice of the filing of the petition, it may do so at its own peril.

In the case of *In re Williams,* 61 B.R. 567, 574 n. 7 (Bankr., N.D.Tex.1986), after citing *Marin* and *Hoffman,* the court stated:

Accordingly, a bank is now under an obligation to refuse payment of checks that are presented to the bank after the date of the filing of the petition where the check was drawn before the date of filing.

However, it is also pointed out at 4 *Collier on Bankruptcy,* ¶ 542.04, pp. 542–16 to 542–17 (15th ed. 1989) that under 11 U.S.C. § 542(c):

An entity is thus not required to turn over property of the estate or pay a debt owing to the debtor as long as it had neither 'actual notice nor actual knowledge of the commencement of the case concerning the debtor,' and as long as it transfers the property or pays the debt in 'good faith.' This provision codifies the holding of *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). An exception is provided so as to preclude an entity, such as a bank that has been stayed under section 362(a)(7), without notice of knowledge of the case from setting of 'any debt owing to the debtor that arose be-

458

fore the commencement of the case under this title against any claim against the debtor.'

Section 362 of 11 U.S.C. "operates as a stay, applicable to all entities, of—

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

Pursuant to the foregoing authority, since it knew of the pending bankruptcy, Peat, Marwick was under a duty and obligation not to allow the Debtor's request "to obtain possession" of his 401(k) account (which on this record was estate property) in the absence of court leave. It did so at its peril. As a result thereof, it might be liable to the Trustee for value of the account. It argues that the Bank was in privy with it. As to whether that could make the Bank liable, and as whether the Bank knew of the bankruptcy, the present record does not allow ruling.

Peat, Marwick's interpretation of bankruptcy turnover law would require this Court to ignore the legislative history regarding 11 U.S.C. § 542. To accept its argument would require that 11 U.S.C. § 542(c) be read as surplusage and that the words in 11 U.S.C. § 542(a) "during the case" and "or the value of such property" be disregarded. Pursuant to case law and § 362(a)(3), Peat, Marwick was under a duty to freeze the 401(k) account and not permit Debtor to gain control over it after Peat, Marwick received notice and knowledge of the bankruptcy case. The Bank was under the same duty if it knew of the bankruptcy case.

For the foregoing reasons, Defendants' present lack of possession is not a defense as a matter of law, and summary judgment on that ground must be denied.

## CONCLUSION

For the foregoing reasons, the motions of Defendants for summary judgment are by separate order each denied.