**ROME INDUSTRIES, INC. d/b/a Reynolds Manufacturing Company of McAllen, Texas, Appellant,**

v.

**INTSEL SOUTHWEST, Appellee.**

**TEXAS AMERICAN BANK, Appellant,**

v.

**INTSEL SOUTHWEST, Appellee.**

**Nos. C14–84–153–CV, C14–84–323CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 6, 1984.

Kenneth Stohner, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellants.

Michael A. Pohl, Kevin Grillo, Gilpin, Maynard, Parsons, Pohl & Bennett, Houston, for appellee.

Before JUNELL and SEARS, JJ., and T. GILBERT SHARPE, Justice (Retired).

## OPINION

JUNELL, Justice.

This is an appeal from summary judgments granted Intsel Southwest (Intsel/Appellee) against Rome Industries, Inc. d/b/a Reynolds Manufacturing Company of McAllen, Texas (Rome) and Texas American Bank (Bank) wherein Intsel sought enforcement of a post-judgment writ of garnishment against assets of its judgment debtor, Kelley Corporation. Both Rome and Bank are appellants. We reverse and remand.

On August 12, 1983, Fesa Corporation N.V. and Kelley Industries, Ltd. (or Kelley Corporation)[1], as Sellers, and Rome Industries, Inc., as Buyer, entered into a purchase agreement whereby Rome would acquire substantially all of the assets of the Sellers pursuant to the bulk sales provisions of the Texas Business and Commerce Code. The purchase agreement named Texas American Bank to serve as escrow agent for distribution of the sales proceeds to the creditors of the Sellers in accordance with TEX.BUS. & COM.CODE ANN. § 6.106 (Tex.UCC) (Vernon 1968). It is undisputed that the total creditor claims of the Sellers exceeded the total sales proceeds.

After receiving notification of the sale, as required by Section 6.105 of the Business and Commerce Code, Intsel sought a post-judgment writ of garnishment against Appellants. On September 16, 1983, and September 19, 1983, respectively, the writs were served on Texas American Bank and Rome Industries. Pursuant to TEX.R. CIV.P. 665, Appellants answered the writ of garnishment, setting forth the following:

(1) At the time the writ was served, neither garnishee was indebted to Kelley Corporation in any amount.

(2) Rome Industries as Buyer entered into a purchase agreement on August 12, 1983 with Fesa Corporation, N.V. and Kelley Industries, Ltd. as Sellers.

(3) On October 4, 1983, a closing of the purchase agreement took place and Rome Industries purchased certain assets of Fesa Corporation, N.V. and Kelley Industries, Ltd. in consideration for the payment of $777,320 to Texas American Bank, as escrow agent.

(4) The Sale was made pursuant to the bulk sales provisions of the Texas Business and Commerce Code.

Upon finding that Appellants were indebted to Kelley Corporation for $777,320, the trial court entered summary judgment against both Appellants for the sum of $40,344.56.

---

1. The record reflects that the judgment debtor is referred to throughout as Kelley Corporation whereas the purchase agreement names Fesa Corporation N.V. and Kelley Industries, Ltd. as the Sellers. However, in response to Intsel's Request for Admissions, Rome admitted that "[o]n or about October 4, 1983, the Sale of the Judgment Debtor's (Kelley Corporation) assets to Rome Industries was consumated [sic]" Thus, it is apparent that the names have been used interchangeably.

In points of error one through three, Appellants contend the trial court erred in granting Intsel's motion for summary judgment because neither Rome nor Bank was indebted to Kelley on the dates the writs of garnishment were served or thereafter. In addressing these points, this court must determine whether a judgment creditor who, after notification of the sale, pursuant to TEX.BUS. & COM.CODE § 6.104, et seq., serves a writ of garnishment on a purchaser in a bulk sales transaction, is entitled to receive payment in full from the purchaser for its claim against the seller, as judgment debtor, or only a pro-rata share, when the purchase price is insufficient to pay all of the creditors.

TEX.REV.CIV.STAT.ANN. art. 4084 (Vernon 1968) provides that after a writ of garnishment is served, "it shall not be lawful for the garnishee *to pay to the defendant any debt* or to deliver to him any effects...." A writ of garnishment not only impounds the funds held by garnishee when the writ is served, but also funds belonging to the debtor up to and including the day the garnishee is required to file its answer. *First National Bank in Dallas v. Banco Longoria, S.A.,* 356 S.W.2d 192 (Tex.Civ.App.—San Antonio 1962, writ ref'd n.r.e.); *Cooper v. Cocke,* 145 S.W.2d 275 (Tex.Civ.App.—Amarillo 1940, no writ). In *Beggs v. Fite,* 130 Tex. 46, 106 S.W.2d 1039, 1042 (1937) the supreme court stated that:

> A plaintiff in garnishment is, by virtue of the statute, subrogated to the rights of his debtor against the garnishee. In other words, by strict compliance with our garnishment statutes, a plaintiff in garnishment merely steps into the shoes of his debtor as against the garnishee, and may enforce, as against such garnishee, *whatever rights the debtor could have enforced had such debtor been suing the garnishee directly.* (Emphasis added.)

It follows, of course, that the garnishor acquires no greater right by service of the writ than the judgment debtor could assert and enforce against the garnishee. *Pearson Grain Co. v. Plains Trucking Co., Inc.,* 494 S.W.2d 639 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.). In determining the force and effect of the writ of garnishment on Appellants, we must decide whether Kelley Corporation, the judgment debtor, could have successfully sued Appellants for the proceeds of the bulk sale. In our opinion it could not.

Bulk sales are governed by the provisions of Chapter 6 of the Business and Commerce Code, commonly referred to as the Bulk Transfers Act. A bulk transfer is defined as "any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory of an enterprise subject to this chapter." TEX.BUS. & COM.CODE ANN. § 6.102 (Tex.UCC) (Vernon 1968). Under the Act a bulk transfer is ineffective against any creditor of the transferor unless the transferee does the following: (1) requires the transferor to furnish the transferee a sworn list of existing creditors; (2) arranges with the transferor for the preparation of a schedule of the property transferred sufficient to identify it; (3) preserves the list and schedule for six months following the transfer for inspection by seller's creditors; and (4) *gives notice to the transferor's creditors of the sale at least ten days before he takes possession of the goods or pays for them, whichever happens first.*

The current Act does not set out the remedies available to a creditor if the provisions of the Act are not followed. However, it seems clear that, absent compliance of the parties to a bulk sale, creditors may ignore the transfer and pursue whatever remedies would be available to them under state laws outside of the code. *See Southwestern Drug Corp. v. McKesson & Robbins, Inc.*[2], 141 Tex. 284, 172 S.W.2d 485,

**2.** This case was decided under the Texas Bulk Sales Act, TEX.REV.CIV.STAT.ANN. arts. 4001–03. This legislation was replaced on July 1, 1966, by Article 6 of the Uniform Commercial Code.

486–487 (1943); *Anderson & Clayton Co. v. Earnest*, 610 S.W.2d 846, 848 (Tex.Civ. App.—Amarillo 1980, no writ); Sections 6.104 comment 2 and 6.105 comment 3, TEX.BUS. & COM.CODE ANN. (Tex.UCC) (Vernon 1968); also see *Clontz*, "Should an Article 6 Study Be The Next Task For The Permanent Editorial Board," 4 U.C.C.L.J. 214 (1972).

■ In the case before us we are not faced with a claim of noncompliance with the Act. In fact, it is undisputed that the parties involved fully complied with the requirements set forth in the bulk transfer provisions. Therefore, we believe Section 6.106 clearly limits Appellee's recovery to a pro rata portion of the sales proceeds.

Section 6.106 of the Act provides the following:

> In addition to the requirements of the two preceding sections:
>
> (1) Upon every bulk transfer subject to this chapter for which new consideration becomes payable except those made by sale at auction *it is the duty of the transferee to assure that such consideration is applied so far as necessary to pay those debts of the transferor* which are either shown on the list furnished by the transferor (Section 6.104) or filed in writing in the place stated in the notice (Section 6.107) within thirty days after the mailing of such notice. *This duty of the transferee runs to all the holders of such debts, and may be enforced by any of them for the benefit of all.* (Emphasis added.)
>
> (2) If any of said debts are in dispute the necessary sum may be withheld from distribution until the dispute is settled or adjudicated.
>
> (3) *If the consideration·payable is not enough to pay all of the said debts in full distribution shall be made pro rata.* (Emphasis added.)

Under Section 6.106, the transferee, in effect, guarantees that the consideration paid for the assets of the transferor will be used to satisfy the transferor's debts. It further provides that the duty of the trans-feree to apply the proceeds to the debts of his transferor may be enforced by any creditor for the benefit of all. Section 6.106(3) further states that if the consideration is not enough to satisfy the debts in full, pro rata distribution shall be made. This provision, as worded, clearly accords no rights to the judgment debtor to the proceeds of the sale. Therefore, we cannot support Appellee's contention that a judgment creditor, after proper notification of an impending bulk transfer pursuant to the Bulk Transfers Act, may cut off the rights of other creditors, similarly notified, by serving a writ of garnishment upon the transferee. We believe these proceeds are payable solely to the seller's creditors, pro rata, not to the judgment debtor.

No Texas courts have directly addressed the issues before us. Appellee cites a Pennsylvania case to support its position. In *In Re Bulk Sale Clement*, 98 Dauph. 55, 71 Pa.D. & C.2nd 717, 18 UCC Rptr. 1280 (CP 1976), the Pennsylvania Court of Common Pleas addressed the question whether lien creditors are entitled to a preference over general creditors in the distribution of proceeds pursuant to a bulk transfer. There, the three lien creditors each had obtained judgments, and writs of execution and attachment on the debtors' personal property had issued *one to three months before the bulk sale occurred*. The court noted that, in fact, after the sheriff's attachment of the debtors' property some months before, a bulk sale was impossible and of no effect. The court held that under these circumstances, the lien-holders had acquired secured status and were entitled to a priority right.

The case before us is distinguishable from the Pennsylvania case. While Appellee claims it had a judgment lien prior to the actual transfer, a review of the record indicates that prior to notification of the bulk sale, Appellee had not perfected any judgment lien. There is nothing in the record before us showing issuance of any writ of execution or any levy on and legal seizure of any personal property of Kelley. This would have been necessary to perfect

a judgment lien, and even then such lien would have been against only the personal property actually seized. *Fore v. United States,* 339 F.2d 70 (5th Cir.1964), *cert. denied,* 381 U.S. 912, 85 S.Ct. 1532, 14 L.Ed.2d 433 (1965); 34 TEX.JUR.3d *Enforcement of Judgments* § 67 (1984). *See generally C.I.T. Corp. v. Haynie,* 135 S.W.2d 618 (Tex.Civ.App.—Eastland 1939, no writ). Apparently, the first action taken by Intsel after judgment was its application for a writ of garnishment. This action was not sufficient to make Appellee a secured creditor with a priority right over other creditors. We sustain Appellants' points of error one through three.

In light of our disposition of Appellants' first three points of error, there is no need for us to address the remaining points.

The judgments of the trial court are reversed and both cases are remanded to the trial court.