In re Jose F. & Maria Adela OLIVAS
d/b/a Olivas Paint & Body,
Debtors.

Bankruptcy No. 91–50299–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

July 2, 1991.

John M. O'Connell, San Antonio, Tex., for debtor.

Benjamin R. Bingham, San Antonio, Tex., for creditor Northwest Bank, N.A.

## MEMORANDUM DECISION

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the motion of Jose F. Olivas and Maria Adela Olivas, d/b/a Olivas Paint and Body Shop and Auto Sales ("Debtors") to compel release of garnishment and for sanctions against Northwest Bank, N.A. and the response thereto. After a hearing, the court now enters this decision disposing of these matters.

## JURISDICTION

This court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and may enter a final order with respect thereto. 28 U.S.C. § 157(c)(2). This matter is a core proceeding. 28 U.S.C. §§ 157(b)(2)(A), (E).

## FACTUAL BACKGROUND

On December 17, 1990 Northwest Bank, N.A. ("Bank") obtained a default judgement, in the 150th District Court in Bexar County, Texas, against the Debtors in the amount of $47,654.76. On January 23, 1991 the Bank issued a writ of garnishment against two bank accounts of the Debtor located at Intercon Bank, Lackland under the trade names Olivas Paint and Body Shop and Olivas Auto Sales. Debtor subsequently filed Chapter 13 bankruptcy on January 29, 1991, approximately six days *after* the writ of garnishment had been served on the accounts at Intercon Bank. On January 31, 1991 Intercon Bank answered the writ of garnishment averring that it had the total sum of $6,987.98 on deposit. Debtor charges the amount to be closer to $12,000.00.

Debtor admits that the Bank has a security interest in the accounts at Intercon Bank through the post-judgment garnishment liens but asserts that the automatic stay of Section 362 prohibits the Bank from maintaining these liens and requires some form of affirmative release of such liens.[1]

The Bank counters that the Debtor's motion to compel release of garnishment has been improperly filed as a motion as opposed to an adversary proceeding as mandated by Bankruptcy Rule 7001. The Bank also makes a number of other arguments that are not relevant to the ultimate disposition of this proceeding.

---

1. Debtors do not challenge the validity of the underlying default judgments obtained in Bexar County nor the procedural steps taken by Northwest Bank in obtaining their writ of garnishment under Texas law. Accordingly, this court is left to conclude that the default judgments are valid and the proper procedural steps were taken by Northwest Bank in executing the writ of garnishment.

There also appears to be some argument loosely centered around the concept of tracing. Apparently, Northwest Bank is demanding assurance that the accounts it has attached at Intercon Bank are not the proceeds of the sale of vehicles for which the Bank claims to have a perfected security agreement. *See* 11 U.S.C. § 552(b). Debtor asserts that this "demanding of assurance" violates the automatic stay. Debtor also contends the efforts of the Bank at maintaining the status quo by not releasing the lien on the garnished funds is a *"de facto* attempt to assert a preference". *See* 11 U.S.C. § 547. Since neither of the parties have directly argued or presented evidence as to the merits of these issues, the court need not address them further as they are not relevant to the ultimate disposition of the case at bar.

## ANALYSIS

The issue in this case is whether the creation and attachment of a prebankruptcy lien, i.e. a writ of garnishment, and the subsequent refusal to take affirmative steps to release such a lien, post bankruptcy, is in violation of Section 362.

"[A] petition filed under section 301 ... operates as a stay, applicable to all entities [as to] ... the commencement or *continuation* ... against the debtor that was or could have been commenced before the commencement of the case...." 11 U.S.C. § 362(a)(1) (emphasis added). Debtor asserts that the refusal to release the lien on the garnished funds is tantamount to the continuation of action against the Debtor that must be stayed and that, therefore, the Bank's refusal to release their lien in the funds at Intercon Bank is in violation of Sections 362(a)(1) and (h) of the Bankruptcy Code.[2]

The first material point this court must determine is the type of property right that the Bank had obtained *prior* to the Debtor's petition in bankruptcy. This determination is made by reference to Texas law.

In Texas, garnishment is a statutory proceeding through which a debtor's property, money, or credit, in the possession of or owing by another, are applied to pay the debtor's debt to a third party. *Beggs v. Fite,* 130 Tex. 46, 106 S.W.2d 1039, 1052 (1937). The burden is on the person claiming the benefit of the statute to establish his right to recover. *Downs v. Cason,* 250 S.W. 471, 472 (Tex.Civ.App.—San Antonio 1923, no writ). The judgment against the garnishee should be in the amount of the indebtedness shown at trial to have been absolutely owed in an amount certain at the time the garnishee is served. *United States v. Wakefield,* 572 S.W.2d 569, 571 (Tex.Civ.App.—Fort Worth 1978, writ dism'd). The only real issue in a garnishment action is whether the garnishee was indebted to the judgment debtor or had in its possession effects belonging to him at the time of the service of the writ and the filing of the answer. *Chandler v. Cashway Building Materials, Inc.,* 584 S.W.2d 950, 953 (Tex.Civ.App.—El Paso 1979, no writ) (emphasis added). A writ of garnishment, *upon its service,* is operative *in personam* as against the garnishee and is operative *in rem* upon property of judgment debtor in the hands of the garnishee. *Citizens Nat. Bank in Ennis v. Hart,* 321 S.W.2d 319, 320 (Tex.Civ.App.—Fort Worth 1959, writ ref'd) (emphasis added); *see also* Tex.R.Civ.P. 668 (1990). A lien created by the *service of writ of garnishment creates a lien* on property subject to such writ *from date of service of the writ. U.S. v. Standard Brass & Mfg. Co.,* 266 S.W.2d 407, 408 (Tex.Civ.App.—Beaumont 1954, no writ) (emphasis added). Additionally, a writ of garnishment not only impounds funds in the hands of garnishee when the writ is served but also such funds belonging to the debtor up to and including the day the garnishee is to answer. *Rome Industries, Inc. v. Instel Southwest,* 683 S.W.2d 777, 779 (Tex.App.—Houston [14th Dist.] 1984, writ ref. n.r.e.); *First National Bank in Dallas v. Banco Longoria, S.A.,* 356 S.W.2d 192, 196 (Tex.Civ.App.—San

---

**2.** "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).

Antonio 1962, writ ref. n.r.e.).[3] Finally, a garnishor's rights are determined by priority in time, itself determined by the date of service of the writ of garnishment. *Small Business Inv. Co. of Houston v. Champion Intern. Corp.*, 619 S.W.2d 28, 30 (Tex. Civ.App.—Houston (1st Dist.) 1981, no writ).

Chapter 63 of the Texas Civil Practice and Remedies Code provides, in relevant part, that

"[a]fter service of a writ of garnishment, the garnishee may not deliver any effects or pay any debt to the defendant ... A payment, delivery, sale or transfer ... is void as to the amount of debt ... necessary to satisfy the plaintiff's demand."

Tex.Civ.Pract. & Rem.Code, § 63.003 (Vernon 1986).

■ According to both Texas statutory and case law, Northwest Bank had obtained a valid enforceable lien, i.e., a property right[4], on the accounts at Intercon Bank *prior* to the Debtor's bankruptcy.[5] It is undisputed that the Debtor was indebted to the Bank in an amount certain at the time Intercon Bank was served with the writ of garnishment. *United States v. Wakefield*, 572 S.W.2d at 571. The Bank thus had a valid lien on the bank accounts at Intercon Bank the day the writ was served, which was *prior* to the bankruptcy petition. *Citizens Nat. Bank*, 321 S.W.2d at 320; *U.S. v. Standard Brass*, 266 S.W.2d at 408; *Chase Commercial Corp. v. Donald Benson Accessories*, 69 B.R. 32, 34 (N.D.Tex.1986) (garnishor is a secured creditor as of date of service of writ of garnishment). Northwest had completed all the necessary steps to create their interest in the accounts *prior* to the petition. The lien of Northwest Bank would be for at least the amount of the judgment but for no more than the balance in the account as of the service of the writ. *Wakefield*, 572 S.W.2d at 571; *First National Bank in Dallas*, 356 S.W.2d at 196.[6]

Such lien, however, would not extend to any monies deposited with Intercon Bank after January 29, 1991, the bankruptcy petition date, as such attachment would be a "continuation ... [of action] against the debtor" appropriately stayed by Section 362 (the two day spread between the bankruptcy petition and the answer of the writ of garnishment, and beyond, as such monies would not have been attached according to Texas garnishment law). 11 U.S.C. § 362(a)(1); *Rome Industries, Inc.*, 683 S.W.2d at 779; *First National Bank in Dallas*, 356 S.W.2d at 196; *see Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir.1990) (ordinarily, any ac-

---

**3.** As noted earlier, Northwest Bank served the writ of garnishment on January 23, 1991. Debtor filed bankruptcy on January 29, 1991. Intercon Bank filed an answer to the writ on January 31, 1991. The effect of the two day spread between the filing of bankruptcy and the answer to the garnishment will be further addressed in this opinion.

**4.** "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law," *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979). As such, the classification of the respective interest will depend upon Texas state law. *Ohio v. Kovacs*, 469 U.S. 274, 286, 105 S.Ct. 705, 711, 83 L.Ed.2d 649 (1985) (O'Connor, J., concurring). Texas law provides that

Courts have variously defined the word "property" as signifying the physical corporeal thing, or denoting rights and interest. It may be reasonably be construed to include obligations, rights and other intangibles, as well as physical things; and thus the word proper-

ty means not only the thing possessed, that is, the physical corporeal thing, but also rights in the physical corporeal thing which are created and sanctioned by law.

*Davis v. Davis*, 495 S.W.2d 607, 611 (Tex.Civ. App.—Dallas 1973, writ dism'd).

**5.** This is not the same as so-called administrative freezes done without the aid of a separately conferred property right. *See, e.g., First Connecticut Small Business Investment Co.*, 118 B.R. 179 (Bankr.D.Conn.1990); *In re Patterson*, 125 B.R. 40 (Bankr.N.D.Ala.1990); *Small Business Admin. v. Rinehart*, 887 F.2d 165, 168 (8th Cir. 1989) ("we agree with those courts which have held that a governmental agency violates the automatic stay when it 'holds' or 'freezes' payments the debtor is otherwise entitled to receive.").

**6.** The parties are in the best position to resolve amongst themselves the balance in the accounts as of the service of the writ. As it now stands, the amount is somewhere between $6,987.98 and $12,000.00.

tion taken in violation of the automatic stay is void and without effect); *In re Janis,* 125 B.R. 274, 279 (Bankr.D.Ariz.1991); *In re James,* 120 B.R. 802, 814 (Bankr.E.D.Pa. 1990); *In re Dungey,* 99 B.R. 814, 817 (Bankr.S.D.Ohio 1989) (continual garnishment efforts stayed by Section 362).[7]

Section 362 also provides, in relevant part, that "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" is stayed. 11 U.S.C. § 362(a)(3). The accounts in issue as of the petition date were property of the bankruptcy estate. By the same token, the accounts were also subject to the liens obtained in the state court proceedings.[8] Northwest Bank, as a lien creditor, is entitled to adequate protection through Section 363 as surely as would be any other secured creditor. *See* 11 U.S.C. § 363(e); *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 211–12, 103 S.Ct. 2309, 2316, 76 L.Ed.2d 515 (1983).

■ This right to receive adequate protection supports the conclusion that this court cannot impose, in the name of enforcing the automatic stay, an *affirmative duty* on the creditor *to release a lien.* Such a result would be a *de facto taking* of the Bank's property without due process of law in violation of the Fifth Amendment to the Constitution. U.S. Const. amend. V.; *Wright v. Union Cent. Life Ins. Co.,* 304 U.S. 502, 518, 58 S.Ct. 1025, 1034, 82 L.Ed. 1490 (1938).

Property rights do not gain any absolute inviolability in the bankruptcy court because created and protected by state law. Most property rights are so created and protected. But if Congress is acting within its bankruptcy power, it may authorize the bankruptcy court to affect these property rights, *provided the limitations of the due process clause are observed.*

*Wright,* 304 U.S. at 518, 58 S.Ct. at 1033 (emphasis added).[9]

This is not to say that either the Debtor or the Bank have a paramount right to the accounts. The Bank may be vulnerable to a preference action under Section 547 or the accounts may qualify as some form of exempt property triggering the application of Section 522(j). None of these issues raises any duty under Section 362(a), nor do they affect the creditor's current entitlement to adequate protection of its interest under Section 363(e).

■ The proper method to determine the relative interests in the accounts at Intercon Bank is by an adversary proceeding initiated under Section 542. This is the due process procedural safeguard that must be utilized. *See Wright,* 304 U.S. at 518, 58 S.Ct. at 1033. "An adversary proceeding ... is a proceeding (1) to recover money or property ... (2) to determine the validity, priority, or extent of a lien or other interest in property ..." Bankr.R. 7001; *In re Frizzell,* 104 B.R. 75, 76 (Bkrtcy.S.D.Ind.1989) ("a proceeding to recover or property ... must be brought as an adversary proceeding"). In such a proceeding, the creditor can raise its adequate protection concerns. Meanwhile, the debtor can, to the extent authorized by Section

---

**7.** Section 552 dealing with the postpetition effect of consensual security interests in after-acquired property is inapplicable as the case at bar, because the garnishment is nonconsensual. *See* 11 U.S.C. § 552.

**8.** The Debtor still had a "legal or equitable interest[ ] ... in [these funds at Intercon Bank] as of the commencement of the case." *See* 11 U.S.C. § 541(a).

**9.** Some courts hold that a creditor has an affirmative duty to return property and restore the status quo once it learns its acts have violated the automatic stay. *See Abrams v. Southwest Leasing & Rental Inc.,* 127 B.R. 239 (9th Cir. BAP, 1991); *In re Wariner,* 16 B.R. 216, 218

(Bankr.N.D.Tex.1981); *Matter of Clark,* 60 B.R. 13, 14 (Bankr.N.D.Ohio 1986); *see also In re Knaus,* 889 F.2d 773 (8th Cir.1989). *Abrams* is distinguished as the property there was seized post-petition and, as such, the affirmative duty to return was an outgrowth of this factor. *In re Wariner* and *Matter of Clark* are distinguishable as the property in issue could be returned to the debtor without compromising the debtor's security interest. In the case at bar, compelling release of the garnishment would be tantamount to stripping the Bank of its property right without the procedural safeguards mandated by the Constitution.

522, seek to avoid the garnishment as a preference.

Since there is no affirmative duty to release the liens, sanctions under Section 362(h) are not warranted.

Orders will be entered consistent with this opinion. Movant is requested to submit the appropriate forms of order within twenty days from the date of entry of this judgment.[10]

So ORDERED.

---

**10.** Movant is given twenty days in order to determine, by mutual agreement with Northwest, the amount of money on hand at Intercon Bank as of the day of the service of the writ.