**In re John E. GILES, Debtor.**

**No. 01–22865–8W3.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 24, 2002.

Matthew J. Kovschak, Bartow, FL, for debtor.

Eric B. Zwiebel, P.A., Plantation, FL, for Imperial.

Terry E. Smith, Bradenton, FL, trustee.

*Memorandum Decision and Order on Motion for Order to Show Cause*

MICHAEL G. WILLIAMSON,
Bankruptcy Judge.

This case came on for hearing on January 7, 2002, on a motion filed by the debtor, John E. Giles ("Debtor"), requesting an order to show cause ("Motion") why Imperial Business Credit, Inc. ("Imperial") should not be sanctioned for willful violation of the automatic stay. For the reasons set forth below, the Motion will be denied.

### Findings of Fact

The Debtor filed his petition under chapter 13 on December 11, 2001 ("Petition Date"). Prior to the Petition Date, Imperial had obtained a judgment against the Debtor in the amount of $63,981.15 ("Judgment"). Seeking to collect on the Judgment, on December 7, 2001, four days prior to the Petition Date, Imperial served a writ of garnishment on the bank at which the Debtor maintained two bank accounts. The balances of these accounts amounted to $9,841.80 ("Bank Accounts"). Upon the filing of the petition, the Debtor made demand upon Imperial that it release the garnishment in light of the automatic stay. Imperial refused. This Motion for sanctions followed.

### Issue

Under the circumstances of this case, is the refusal of Imperial to voluntarily and affirmatively release the garnishment

against the Bank Accounts a violation of the automatic stay?

### Conclusions of Law

■ The court has jurisdiction over this matter pursuant to 28 U.S.C. section 1334. In accordance with 28 U.S.C. section 157(b)(3), the court determines that this is a core proceeding under 28 U.S.C. section 157(b)(2)(A), (B), and (O).

In support of the Motion, the Debtor relies on the factually similar case of *In re Mims*, 209 B.R. 746 (Bankr.M.D.Fla.1997). In *Mims*, the Honorable Karen S. Jennemann had before her this very issue on substantially the same facts. In that case, the creditor had obtained a final judgment against the debtor and served a writ of garnishment on a garnishee bank to collect upon the judgment prior to the bankruptcy filing. In response, the garnishee bank froze funds deposited by the debtor in a bank account.

After the filing of the debtor's bankruptcy, on several occasions, the debtor's counsel notified the creditor of the debtor's bankruptcy filing and advised the creditor to release the frozen funds or dissolve the pending garnishment pursuant to 11 U.S.C. section 362(a). *Id.* at 748. As in this case, the creditor likewise refused to dismiss the garnishment action, contending that it had no affirmative duty to take any action to release the garnished funds.

■ Judge Jennemann correctly noted that the automatic stay directly prohibits

the "continuation" of any judicial action against the debtor or any act to collect any debt which arose prior to bankruptcy, citing to *Elder v. City of Thomasville*, 12 B.R. 491 (Bankr.M.D.Ga.1981) and *Dennis v. Pentagon Federal Credit Union*, 17 B.R. 558 (Bankr.M.D.Ga.1982). *Mims*, 209 B.R. at 748. As a general proposition, the continuation of a garnishment proceeding is a judicial action against the debtor and is stayed by 11 U.S.C. section 362. Accordingly, in the *Mims* case, Judge Jennemann concluded that the creditor had an affirmative duty to dismiss the garnishment proceeding upon notification that the debtor had filed bankruptcy. In light of the refusal to dismiss the garnishment, she awarded sanctions against the creditor for violating the stay.

Importantly, in the *Mims* case, the garnishing creditor did not have a lien on the obligation of the bank to pay the debtor the funds in the bank accounts. The law in Florida at the time that the *Mims* case was decided was that a lien did not arise upon the service of a writ of garnishment. Rather, it was the judgment entered on the writ of garnishment that created the lien in favor of the garnishor. *Continental National Bank of Miami v. Tavormina (In re Masvidal)*, 10 F.3d 761, 763 (11th Cir.1993) ("*Masvidal*").

After the decision in *Mims*, however, the Florida legislature amended the Florida garnishment statute, section 77.06, Fla. Stat. (effective July 1, 2000), to specifically overrule the result of *Masvidal*.[1] The ad-

1. *See Senate Staff Analysis and Economic Impact Statement for Bill SB2016* (April 3, 1998, rev. April 22, 1998), at 6–7. In relevant part, the report states that:

The bill clarifies Florida law regarding the effect of service of [sic] writ of garnishment. In *Masvidal* [citation omitted], the Eleventh Circuit Court of Appeals construed existing Florida law not to afford a garnishing creditor who has not yet obtained judgment against the garnishee priority as against an attack by a bankruptcy trustee under 11 U.S.C. § 544. Under this amendment, the service of a writ of garnishment will create a lien upon the funds or property belonging to a debtor in the hands of a third party garnishee that will establish the creditor's priority in bankruptcy, thus altering the result the court reached in *Masvidal*.

dition to the statute provides that "[s]ervice of the writ creates a lien in or upon any such debts or property at the time of service... [of the writ]." Fla. Stat. § 77.06(a) (last line to subsection (a) was added by the amendments).

Thus, in light of this recent change in Florida law, the situation before this court is materially different from the one confronting Judge Jennemann in *Mims*. The debt owing to the Debtor by the bank in this case has a lien against it created by service of the writ of garnishment. Before Imperial can take further action in the state court to conclude its garnishment action, it will, of course, need relief from stay, but the question before the court is whether taking *no* action to release funds that are subject to its lien violates the automatic stay.

The United States Supreme Court addressed a similar issue in the case of *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). In *Strumpf*, the debtor contended that a bank's administrative hold on the debtor's bank accounts violated the automatic stay. In rejecting the debtor's contention, the Supreme Court, in the context of a bank refusing to perform its promise to pay its depositor because of its setoff rights, noted that the debtor's "reliance on [the automatic stay] rests on the false premise that [the bank's] administrative hold took something from [the debtor], or exercised dominion over property that belonged to [the debtor]." *Id.* at 21, 116 S.Ct. 286.

*Strumpf* dealt with the right of a bank to setoff against its customer's accounts a debt owed to the bank by the customer. The right to setoff is recognized and protected under Bankruptcy Code section 553 just as the right of a lienholder to adequate protection is protected under Bankruptcy Code sections 361, 362, 363 and 364. Further, both the holders of liens and rights of setoff are entitled to secured status under Bankruptcy Code section 506. As noted by *Strumpf*, if the holder of a setoff right was compelled under threat of sanctions for violating the automatic stay to release funds subject to such setoff, "it would divest the creditor of the very thing that supports the setoff." *Id.* at 20, 116 S.Ct. 286.

It is this court's view that to release the Bank Accounts to the Debtor would give the Debtor the right to use of the funds to the detriment of Imperial's garnishment lien rights contrary to the principles recognized in *Strumpf*. Under such circumstances, the refusal to release the garnishment (and, in turn, release the lien) takes nothing from the Debtor because the Debtor's rights in the Bank Accounts are subordinate to Imperial's lien rights.[2] This is to be distinguished from the situation in *Mims* where the creditor had no lien rights and the refusal to release the garnishment was clearly an attempt to exercise control over property in which the creditor had no lien.

Clearly, "[w]here a creditor's lien might be destroyed if its collateral were released," the creditor must be provided adequate protection before being required to essentially turn over the account that is the subject of its lien by releasing its garnishment. *In re Bernstein*, 252 B.R. 846, 850 (Bankr.D.D.C.2000). As discussed in *Bernstein*, the right of adequate protection cannot be "rendered meaningless by an interpretation of § 362(a)(3) ... that would compel turnover even before an

---

**2.** The court makes no determination as to whether Imperial's lien rights are avoidable by the chapter 13 trustee under Bankruptcy Code §§ 544, 545, 547, 548, or 549 or by the Debtor under §§ 522(g) and 522(h). Any action under those provisions to the extent appropriate would need to be brought by separate proceeding.

opportunity for the court's granting adequate protection." *Id.* Neither Bankruptcy Code section 362(a)(3) nor the turnover provision of section 542(a) "operate to destroy the right to insist on adequate protection as a condition to turnover than did section 362(a)(3) destroy the right of setoff in *Strumpf,* 516 U.S. at 21, 116 S.Ct. 286...." *Bernstein,* 252 B.R. at 851.

*Conclusion*

In this case, the violation of the automatic stay alleged by the Debtor is the failure of a creditor to release a garnished account to the detriment of its lien rights. Under such circumstances, the court concludes that the creditor's refusal to release its lien did not violate the automatic stay. It follows, therefore, that the Debtor is not entitled to sanctions against Imperial.

Accordingly, for these reasons, it is

ORDERED that the Motion is denied.