**In re Deborah Elaine SAULTS, Debtor.**

**Deborah Saults, Plaintiff,**

**v.**

**First Tennessee Bank, Defendant.**

**Bankruptcy No. 01–23019.**
**Adversary No. 02–2010.**

United States Bankruptcy Court,
E.D. Tennessee.

Sept. 11, 2002.

---

Dean Greer, Esq., Kingsport, TN, for Deborah Saults.

Frederick L. Conrad, Jr., Esq., Knoxville, TN, for First Tennessee Bank.

## *MEMORANDUM*

MARCIA PHILLIPS PARSONS,
Bankruptcy Judge.

In this adversary proceeding, the debtor seeks to avoid a prepetition garnishment of her bank account under 11 U.S.C. § 522(h) and a determination that the defendant has violated the automatic stay by its actions in refusing to turnover the garnished funds. Presently before the court is the defendant's motion for summary judgment based on judicial estoppel, the debtor's alleged bad faith, the alleged untimeliness of the debtor's exemption claim, the absence of trustee approval to the avoidance action, and the lack of a willful stay violation. For the reasons discussed below, the motion will be granted. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A),(B),(E),(K) and (O).

### I.

The debtor Deborah Elaine Saults filed a voluntary petition for relief under chapter 7 on August 30, 2001, and received a discharge on December 6, 2001. The instant adversary proceeding was commenced by the debtor against the defendant First Tennessee Bank ("First Tennessee") on February 6, 2002. The debtor states in the complaint that First Tennessee held a prepetition judgment against the debtor in the amount of $3,235.49 and that in late July or early August 2001, First Tennessee issued an execution on the joint account of the debtor and her husband at AmSouth Bank. In response to the execution, AmSouth took the sum of $1,611 from the joint account and mailed it to the Washington County General Sessions Court Clerk, who received the funds on August 28, 2001. Thereafter on September 20, 2001, after the debtor's August 30, 2001 bankruptcy filing, the clerk of the court mailed a check for the funds to First

Tennessee's attorney. The debtor alleges that these monies are still being held by the attorney or that he has remitted them to First Tennessee.

Based on these facts, the debtor alleges that the involuntary transfer to First Tennessee is avoidable by the chapter 7 trustee as a preferential transfer under 11 U.S.C. § 547(b), that the trustee has not sought to avoid the transfer and in fact has filed a report of abandonment, that the debtor has amended her *Schedule C* to claim the funds exempt, and that thus, the transfer may be avoided by the debtor pursuant to 11 U.S.C. § 522(h). The debtor also alleges that First Tennessee's actions were willful violations of various subsections of 11 U.S.C. § 362, the automatic stay provision. The debtor seeks a judgment for the amount taken from her bank account, plus compensatory damages for the alleged stay violations, including attorney fees and expenses, and sanctions.

On August 12, 2002, First Tennessee filed a motion for summary judgment, supported by the affidavit of its attorney, Frederick L. Conrad, Jr., and the debtor's responses to certain interrogatories. First Tennessee maintains that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.

The first basis for judgment in First Tennessee's favor is grounded on the doctrine of judicial estoppel. First Tennessee asserts that the debtor took the position with the state court that the bank funds did not belong to her. First Tennessee maintains that because of this assertion, the debtor is precluded by judicial estoppel from exempting the funds in her bankruptcy case. The second basis for the summary judgment motion is that the debtor's bad faith bars her from amending her *Schedule C* to claim the transferred bank monies as exempt. The third ground is

that the debtor cannot claim the exemption because it was not asserted before the execution took place. The fourth premise is that the debtor has not obtained the chapter 7 trustee's approval for the release of the funds to the debtor. The fifth and final assertion is that First Tennessee has not willfully violated the automatic stay.

The debtor responded to First Tennessee' motion on August 23, 2002, by filing her personal affidavit and a statement of facts which she alleges establish that there is a genuine issue of material fact, precluding summary judgment. Each of First Tennessee's bases for summary judgment will be addressed in seriatim.

## II.

Rule 56 of the Federal Rules of Civil Procedure, as incorporated by Fed. R. Bankr.P. 7056, mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party." *Poss v. Morris (In re Morris)*, 260 F.3d 654, 665 (6th Cir.2001)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). To prevail, the nonmovant must show sufficient evidence to create a genuine issue of material fact and from which the court could reasonably find for the nonmovant. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986)). In other words, a nonmoving party has the affirmative duty to direct the court's attention to specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *Id. See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989).

## III.

■ First Tennessee's judicial estoppel argument is premised on the debtor's actions in state court. From the statements in the documents filed by the parties, it appears undisputed that after the general sessions court issued the execution to levy on the debtor's bank accounts, the debtor pro se filed a motion to quash the execution, stating that "money taken from checking acc [sic] belonged to my husband not to me." In her response to interrogatories, the debtor explained this statement, saying "my husband had given me $1,496.64 which came from his business to deposit into the joint checking account at AmSouth Bank and to use those funds to pay his personal bills." Notwithstanding this explanation, First Tennessee contends that the debtor's denial of ownership prevents her from "claiming in subsequent litigation (such as this proceeding) that the funds did in fact belong to her (to allow her to exempt them)."

■ "Federal standards govern the application of judicial estoppel in federal court." *Warda v. Commissioner*, 15 F.3d 533, 538 n. 4 (6th Cir.1994). In its most recent pronouncement on the issue, the Sixth Circuit Court of Appeals stated the following:

The doctrine of judicial estoppel "forbids a party 'from taking a position inconsis-

tent with one successfully and unequivocally asserted by the same party in a prior proceeding.'" *Teledyne Indus., Inc. v. Nat'l Labor Relations Bd.*, 911 F.2d 1214, 1217 (6th Cir.1990). Courts apply judicial estoppel in order to "preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment." *Teledyne*, 911 F.2d at 1218. The doctrine applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court. *Id. Griffith v. Wal–Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir.1998). Furthermore, judicial estoppel is to be "applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Id.* at 382.

Applying the three criteria for application of judicial estoppel to the present case, there is no evidence before this court that the debtor's prior statement was made under oath, even assuming that the debtor took a contrary position before that court. And, contrary to accepting the debtor's statement that the bank funds did not belong to her, i.e., by granting her motion to quash, the state court, according to Mr. Conrad's affidavit, dismissed the debtor's motion to quash for failure to prosecute, thus allowing the execution to proceed. Accordingly, First Tennessee is not entitled to summary judgment based on judicial estoppel.

■ First Tennessee's second basis for its summary judgment motion is premised on the debtor's alleged bad faith, which it contends precludes the debtor from exempting the transferred bank funds. As

evidence of the debtor's bad faith, First Tennessee cites the debtor's initial statement in state court that the funds did not belong to her, the fact that the debtor did not claim an exemption in these funds until after her discharge, and what it characterizes as debtor's "fail[ure] to properly identify the funds in her list of assets filed in this Court." In her statement of financial affairs filed on September 11, 2001, within two weeks of her bankruptcy filing, the debtor stated in response to question 4(b) which asks for a description of property attached, garnished or seized within the preceding year that "$1200 [was] taken from joint checking account of Deborah and Elaine Saultz [sic]." The next reference to these funds was when the debtor amended her *Schedule C* on January 18, 2002, after having received a discharge on December 6, 2001, to assert a $1,600 exemption in "[f]unds seized by First Tennessee Bank on August 28, 2001."

In response to these contentions, the debtor states in her affidavit that "the garnishment amount was listed erroneously in my petition because at the time I signed my petition, I did not have the bank statement showing the exact amount taken . . . ." The debtor asserts in her "Statement of Facts" that "the other owner of the account was incorrectly listed as Elaine Saults" and notes that her full name is Deborah Elaine Saults. As further explanation in her affidavit, the debtor states "I did not claim the property as exempt or list the claim against the bank on schedule B because I was not aware that I had a right to pursue such funds. Upon learning that I could file an action under 11 U.S.C. § 522(h), I authorized my attorney to pursue this matter." The debtor argues in her response to First Tennessee's summary judgment motion that her explanations show that there is a genuine issue as to the material facts.

The court agrees with the debtor in this regard. The Sixth Circuit Court of Appeals has often reiterated that a debtor's good faith is an inherently factual determination adjudged from a totality of the circumstances. *See, e.g., Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co. (In re Trident Assocs. Ltd. P'ship)*, 52 F.3d 127, 131 (6th Cir.1995)("Good faith is an amorphous notion, largely defined by factual inquiry."). Thus, summary judgment on this issue is inappropriate.

■ The third argument raised by First Tennessee in favor of summary judgment is that the debtor's exemption claim was untimely. First Tennessee asserts that under Tennessee state law, an exemption is waived unless it is raised prior to the filing of the execution. First Tennessee notes that this court has rejected such a position in another case, but seeks to distinguish that holding or alternatively, requests the court to reconsider.

Earlier this year, in *In re Lafoon*, 278 B.R. 767 (Bankr.E.D.Tenn.2002), this court held that the debtor's prepetition, procedural waiver of an exemption under Tennessee law did not preclude the debtor from avoiding in bankruptcy a lien which impaired that "waived" exemption. The *Lafoon* decision was subsequently affirmed by the district court. *See In re Lafoon*, No. 2:02–CV–77 (E.D. Tenn. June 13, 2002). While this ruling was made with respect to avoidance of judicial liens under 11 U.S.C. § 522(f)(1) rather than as a preferential transfer under § 522(h), this court noted in *Lafoon* that a wage garnishment may be both a preferential transfer and a judicial lien. *In re Lafoon*, 278 B.R. at 770. Similarly, in the present case, because the defendant's garnishment is potentially avoidable under § 522(f) as well as § 522(h), this court will apply the *Lafoon* holding to the facts herein.

■ With respect to First Tennessee's assertion that *Lafoon* is distinguishable from the present case, First Tennessee notes that in *Lafoon*, the funds were still in possession of the state court while in the present case the funds are in the creditor's hands and the debtor has received a discharge. These distinctions, however, do not compel a different result. For preference purposes, a transfer pursuant to a garnishment occurs when the writ of garnishment attaches to the debtor's monies rather than when they were paid over to the judgment creditor. *See Holdway v. Duvoisin (In re Holdway)*, 83 B.R. 510, 513–14 (Bankr.E.D.Tenn.1988). Nonetheless, a "debtor's interest in garnished funds is not terminated until the court pays the funds over to the creditor." *In re Lafoon*, 278 B.R. at 770. Because in the present case the garnished funds had not been forwarded to the defendant at the time of the bankruptcy filing, the debtor retained an interest in the monies which could be claimed exempt. *See Credit Bureau of Hopkinsville v. Richardson (In re Richardson)*, 52 B.R. 237, 239 (Bankr. M.D.Tenn.1985).

■ Furthermore, mere entry of the discharge order does not bar the debtor's exemption claim or a § 522(h) avoidance action by the debtor. Under Fed. R. Bankr.P. 1009, "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." *See also Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir.1984) (affirming validity of Rule 1009 but noting that "[c]ourts may still refuse to allow an amendment where the debtor has acted in bad faith or where property has been concealed"). The debtor's bankruptcy case was still open when she amended *Schedule C* to assert the exemption in the bank funds. And, the timeliness of the present avoidance action

is governed by 11 U.S.C. § 546(a).[1] *See Schroeder v. First Union Nat'l Bank (In re Schroeder)*, 173 B.R. 93, 94 (Bankr. D.Md.1994), *rev'd on other grounds*, 182 B.R. 723 (D.Md.1995)(debtor's right to avoid preferential transfer under §§ 547 and 522(h) is subject to limitations period set forth in 11 U.S.C. § 546(a)). Without going into details regarding the specifics of that statute, suffice it to say that an adversary proceeding commenced within one year of the chapter 7 filing and before the bankruptcy case is closed is timely under § 546(a). Accordingly, First Tennessee's summary judgment motion will be denied to the extent it is based on arguments regarding the timeliness of debtor's exemption claim.

First Tennessee's next basis for summary judgment is that the trustee's approval has not been procured and that if First Tennessee released the funds to the debtor without the trustee's authorization, First Tennessee could be liable to the trustee. Although not in direct response to this argument, the debtor asserts that upon learning she had a right to pursue the funds, she authorized her attorney to amend *Schedules B* and *C* to list the asset and claim the exemption, that "[b]y filing an amended exemption, the Trustee gained an additional 30 days to object to the exemption," and that "[b]y failing to object to the exemption, the Trustee's prior re-lease of his interest in the funds of the estate applied to the claimed amended exemption."

As previously noted, the debtor is seeking to avoid and recover the transfer of funds to First Tennessee pursuant to section 522(h) of the Bankruptcy Code, which permits a debtor to avoid transfers that are avoidable by trustees under sections 544, 545, 547, 548, 549, or 724(a), if the trustee does not attempt to avoid those transfers. *See* 11 U.S.C. § 522(h).[2] As indicated by the debtor, § 522(h)(2)'s requirement that these transfers are not being avoided by the trustee can be met by a debtor claiming an exemption in the property and the trustee's failure to object to the exemption claim. *See Baker v. Kas Enters. (In re Baker)*, 246 B.R. 379, 382 (Bankr.E.D.Mo.2000.); *Pruitt v. Gramatan Investors Corp. (In re Pruitt)*, 72 B.R. 436, 440 (Bankr.E.D.N.Y.1987).

In the present case, while the debtor did file an amendment to her *Schedule C* in order to claim an exemption in the transferred funds, the certificate of service attached to the amendment does not evidence that the amendment was served on Margaret B. Fugate, the chapter 7 trustee in this case, as required by Fed. R. Bankr.P. 1009(a) ("The debtor shall give notice of the amendment to the trustee and to any entity affected thereby.").

---

1. 11 U.S.C. § 546(a) states as follows:

    An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
    (1) the later of—
    (A) 2 years after the entry of the order for relief; or
    (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or election occurs before the expiration of the period specified in subparagraph (A); or
    (2) the time the case is closed or dismissed.

2. 11 U.S.C. § 522(h) states as follows:

    The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
    (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
    (2) the trustee does not attempt to avoid such transfer.

And, neither the bankruptcy case file nor the docket in the bankruptcy case indicate that the debtor ever amended her *Schedule B* to show the monies transferred to First Tennessee Bank as an asset of the estate, notwithstanding her statement in this adversary proceeding to the contrary. In the absence of evidence before the court that the trustee has waived her right to avoid the transfer in this case, either by not objecting to the debtor's exemption claim after notice or by abandonment after scheduling of the asset by the debtor, *see Kottmeier v. United States (In re Kottmeier)*, 240 B.R. 440, 443 (M.D.Fla.1999) ("[T]he vast majority of courts ... requir[e] that an asset be scheduled before it can be abandoned...."); the court is unable to find that § 522(h)(2)'s required showing has been established.

■ First Tennessee's concern that it was at risk if it released funds to the debtor without the approval of the trustee is legitimate. "[I]f an entity in possession of estate property receives notice of the bankruptcy filing but nonetheless transfers the property to anyone other than the trustee, it does so at its peril. In the absence of the property itself the trustee in such instance is entitled to recover the value of the estate property from the entity making the transfer." *In re Borchert*, 143 B.R. 917, 919 (Bankr.D.N.D.1992). In *In re Robertson*, the chapter 7 trustee brought an action against Peat, Marwick for the value of funds constituting property of the estate which it had transferred to the debtor postpetition. *Redfield v. Peat, Marwick, Mitchell and Co. (In re Robertson)*, 105 B.R. 440 (Bankr.N.D.Ill.1989).

Peat, Marwick moved for summary judgment, asserting that the debtor had claimed the funds exempt, that no objection to the exemption had been filed, and that therefore the funds were no longer property of the estate at the time of their transfer to the debtor. *Id.* at 442. The court rejected this argument because the debtor's exemption claim had been late-filed without notice, motion, or leave of court. The court observed that in light of these circumstances, an exemption "is not entitled to the automatic allowance that Bankr.R. 4003(a) gives to a timely filed exemption claim if it is not timely objected to. He who seeks to benefit by the Bankruptcy Rules must abide by them." *Id.* at 450.

This court realizes that the debtor's failure to schedule the asset and to serve the amended exemption schedule on the trustee was probably inadvertent and can be remedied so that she can, hereafter, obtain the trustee's "approval" (or waiver) of her prosecution of this avoidance action. Absent such approval, however, the debtor's § 522(h) action is premature.[3] First Tennessee's summary judgment motion in this regard will be granted.

■ The last basis of First Tennessee's motion for summary judgment is that no willful violation of the automatic stay has occurred. First Tennessee argues that its "actions have at all times been appropriate," that "[t]he funds were not sought from the Court, but rather arrived due to Plaintiff's actions or lack thereof," that the debtor failed to properly identify the funds or claim them exempt before discharge,

---

**3.** As previously noted, the defendant's lien is potentially avoidable not only under § 522(h), but also § 522(f)(1) as a judicial lien. However, even under § 522(f)(1), the debtor must establish that the lien impairs an exemption to which the debtor is entitled. *See In re Liston*, 206 B.R. 235, 237 (Bankr.W.D.Okla.

1997). Until proper notice of an amended exemption claim is provided and the requisite 30-day objection period provided by Fed. R. Bankr.P. 4003(b) has expired, the debtor cannot demonstrate an exemption entitlement. *See, e.g., In re Moore*, 269 B.R. 864, 867–68 (Bankr.D.Idaho 2001).

and that First Tennessee has been holding the funds pending a request from the trustee. In response, the debtor states that by refusing to surrender possession of the funds, First Tennessee exercised control over property of the estate in violation of 11 U.S.C. § 362(a)(3).

There is some support for the debtor's position. In *In re McCall–Pruitt*, 281 B.R. 910, 911 (Bankr.E.D.Mich.2002), the court held that the creditor's postpetition acceptance of funds from the state of Michigan pursuant to a prepetition garnishment filed against the debtor's income tax refund was in violation of the automatic stay, citing the duty of a creditor to halt collection proceedings after a bankruptcy petition is filed. *See also In re Zunich*, 88 B.R. 721, 724 (Bankr.W.D.Pa.1988)(creditor's action in retaining funds mailed to it postpetition pursuant to prepetition garnishment violated stay).

Other courts, under similar facts, have disagreed, although offering different rationales for their shared conclusion that a creditor does not violate the automatic stay by refusing to turnover monies received pursuant to a prepetition execution. For example, the courts in *In re Bernstein* and *In re Quality Health Care* held that stay violations require an affirmative act on the part of a creditor, disagreeing with *TranSouth v. Sharon (In re Sharon)*, 234 B.R. 676 (6th Cir. BAP 1999), wherein the Sixth Circuit Bankruptcy Appellate Panel held in the chapter 13 context that a creditor's postpetition refusal to surrender collateral repossessed prepetition constituted a violation of the automatic stay. *See In re Bernstein*, 252 B.R. 846, 849 (Bankr. D.C.2000); *Gouveia v. IRS (In re Quality Health Care)*, 215 B.R. 543, 572 (Bankr. N.D.Ind.1997). The Eighth Circuit Bankruptcy Appellate Panel held that a postpetition transfer of wages pursuant to a garnishment perfected prepetition when the wages were earned did not violate the stay because the debtor under Arkansas law had no property interest in the wages at the time his bankruptcy case was commenced. *James v. Planters Bank (In re James)*, 257 B.R. 673, 678–79 (8th Cir. BAP 2001). This holding provides no guidance to the facts of the instant case since, as previously noted, "[i]n Tennessee the debtor's interest in garnished funds is not terminated until the court pays the funds over to the creditor." *In re Lafoon*, 278 B.R. at 770 (quoting *In re Richardson*, 52 B.R. at 240).

The most instructive case on this issue is *In re Giles*, a bankruptcy decision rendered earlier this year, wherein four days prior to the filing of the debtor's bankruptcy case, a judgment creditor of the debtor served a writ of garnishment on the bank at which the debtor maintained two bank accounts. *See In re Giles*, 271 B.R. 903, 904 (Bankr.M.D.Fla.2002). Upon the bankruptcy filing, the debtor made demand upon the creditor to release the garnishment and when the creditor refused, the debtor filed a motion for sanctions for violation of the automatic stay. *Id.* Observing that under Florida law, the service of the writ of garnishment created a lien upon the bank accounts, the bankruptcy court questioned "whether taking no action to release funds that are subject to [the creditor's] lien violates the automatic stay." *Id.* at 906. The *Giles* court answered the question in the negative, based on the Supreme Court's holding in *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).

The bankruptcy court observed that in *Strumpf*, the Supreme Court had concluded that a bank's administrative freeze on the debtor's bank account in order to preserve the bank's right of setoff did not violate the automatic stay since if the bank

were required to release the funds "it would divest the creditor of the very thing that supports the setoff." *In re Giles,* 271 B.R. at 906 (quoting *Strumpf,* 516 U.S. at 20, 116 S.Ct. 286). Noting that both the right to setoff and secured status are protected by the Bankruptcy Code, the *Giles* court concluded that requiring the judgment creditor to release its garnishment lien "would give the debtor the right to use of the funds to the detriment of [the judgment creditor's] garnishment lien rights contrary to the principles recognized in *Strumpf*" and that the creditor's refusal to release the garnishment "takes nothing from the Debtor because the Debtor's rights in the Bank Accounts are subordinate to [the judgment creditor's] lien rights." *In re Giles,* 271 B.R. at 906. The *Giles* court also observed that "where a creditor's lien might be destroyed if its collateral were released, the creditor must be provided adequate protection before being required to essentially turn over the account that is the subject of its lien by releasing its garnishment." *Id. See also In re Olivas,* 129 B.R. 122, 126 n. 9 (Bankr. W.D.Tex.1991)(court concluded that judgment creditor's postpetition refusal to release its prepetition garnishment did not violate the automatic stay in light of creditor's right to adequate protection, noting that to hold otherwise "would be tantamount to stripping the Bank of its property right without [due process of law]").

Tennessee law is similar to Florida law with respect to the effect of a writ of garnishment.[4] "The service of the garnishment fixes a lien on the debt or effects in the hands of the garnishee...." *Eggleston v. Third Nat'l Bank in Nashville (In re Eggleston),* 19 B.R. 280, 284 (Bankr.M.D.Tenn.1982)(quoting *Beaumont v. Eason,* 59 Tenn. (12 Heisk.) 417 (1873)). Thus, like the judgment creditor in the *Giles* decision, if the defendant in the present case were required to turnover the garnishment funds to the debtor, it would "divest the creditor of the very thing that supports [its lien]."[5] *See Strumpf,* 516 U.S. at 20, 116 S.Ct. 286. And, even though the debtor may be able to avoid the lien under § 522(f) or (h), until the lien has actually been avoided, the defendant has an interest in the funds that is superior to the debtor's. *See In re Bernstein,* 252 B.R. at 848 n. 2 (fact that lien would be avoidable as a preference adds nothing to the automatic stay analysis: "until any such lien is avoided as a preference, it remains a lien"); *In re Olivas,* 129 B.R. at 126 (vulnerability of garnishment lien to avoidance does not raise a duty under § 362(a)).

Based on the foregoing, the court concludes that the defendant's postpetition receipt of funds garnished prepetition and the defendant's refusal to turn the funds over to the debtor did not constitute violations of the automatic stay by the defen-

---

**4.** The effect of a writ of garnishment is determined by the laws of the state in which the writ issues. *In re Coston,* 65 B.R. 224 (Bankr. D.N.M.1986).

**5.** In some respects, this situation is similar to one created when an automobile mechanic retains an automobile as collateral for an unpaid repair bill. Under the laws of many states, the mechanic is required to retain possession of the automobile in order to maintain perfection of its statutory lien. Under these circumstances, the mechanic does not violate

the automatic stay by refusing to release the automobile because of the exception to the automatic stay set forth in 11 U.S.C. § 362(b)(3), which provides that the filing of a petition does not stay "any act to perfect, or maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title." *See, e.g., Boggan v. Hoff Ford, Inc. (In re Boggan),* 251 B.R. 95 (9th Cir. BAP 2000).

dant.[6] As such, the defendant is entitled to summary judgment on this issue.

## IV.

An order will be entered in accordance with this memorandum opinion.

**6.** The court recognizes that the general sessions clerk's transfer of the funds postpetition was a technical violation of the automatic stay and as such voidable or in the alternative, subject to avoidance as a postpetition transaction under 11 U.S.C. § 549. *See In re Jackson,* 260 B.R. 473 479 (Bankr.E.D.Mo.2001). Even so, the stay violation did not result in any damages to the debtor since the funds remained subject to the defendant's garnishment lien whether they had been transferred to the defendant or remained in the possession of the state court. Furthermore, it is important to contrast the facts of the present case with the facts of *In re Timbs,* 178 B.R. 989 (Bankr.E.D.Tenn.1994), wherein the garnishment continued postpetition and as such was sanctionable as violative of the automatic stay.